GLOBUS, INC., Plaintiff,

v.

David B. JAROFF, Rita Darer, Alan Silver and Techmation Corp., Defendants.

No. 66–Civ. 2656.

United States District Court
S. D. New York.
March 16, 1967.

Mortimer M. Lerner, New York City, for plaintiff.

Louis Kipnis, New York City, for defendants Jaroff and Techmation Corp.

CROAKE, District Judge.

## MEMORANDUM

This is a shareholder's derivative action wherein relief is sought for alleged violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10B–5, 17 C.F.R. § 240.-10b–5, promulgated thereunder by the Securities Exchange Commission. Jurisdiction of this court is predicated upon Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. No diversity of citizenship is asserted.

In its complaint, Globus, Inc. (hereafter GLOBUS) alleges that it is the owner and holder of 8,750 shares of stock of the defendant Techmation Corp. (hereafter TECHMATION), and brings this action on its behalf. Both GLOBUS and TECHMATION are corporations organized under the laws of the State of New York, with their principal place of business in New York. The individual defendants Jaroff and Darer are, respectively, the president and secretary of TECHMATION who, together with the defendant Silver, now comprise the board of directors.

The transaction with which this action is concerned is a stock option agreement entered into between TECHMATION and its president, the defendant David B. Jaroff. The agreement involved 100,-000 shares of the corporation, approximately 40% of the then issued and outstanding 249,057 shares. The agreement, entered into on January 5, 1965, would not become effective until authorized by the holders of a majority of the outstanding shares of stock of the corporation. New York Business Corporation Law, McKinney's Consol.Laws, c. 4, § 505(d). On June 10, 1966, a notice was sent to the shareholders of the corporation, informing them of a meeting to be held on July 2, 1966, for the purpose, among others, of approving and ratifying the stock option agreement with Jaroff. This notice was accompanied by a proxy form providing for approval and ratification of the agreement which the shareholders were asked to sign and return.

The plaintiff contends that the acquisition of the proxies in the foregoing manner was unlawful in that the notice contained untrue statements of material facts, and omitted to state material facts which, under the circumstances, were

necessary to make the statements made not misleading, all amounting to fraud and deceit; and that the approval and ratification of the option agreement was made possible only by virtue of the proxies so solicited, in that, without such proxies, it would have been impossible to obtain at said meeting a vote of the holders of a majority of the issued and outstanding shares of stock of TECH-MATION in favor of approving and ratifying the stock option agreement. The plaintiff alleges that the proxies would not have been obtained had the facts which it characterizes as material not been omitted, and has set forth, in eight separate paragraphs of its complaint, the particular omissions to which it refers, all relating to the terms of the agreement or the circumstances under which it was made.

The defendants bring this motion for an order pursuant to Rules 12(b) (1), 12(b) (6), and 23.1, Fed.R.Civ.P., dismissing this action on the grounds that:

a) this court lacks jurisdiction over the subject matter thereof;

b) the complaint fails to state a claim under the Securities Exchange Act of 1934, or the Rules or Regulations promulgated thereunder, upon which relief may be granted;

c) the plaintiff does not fairly and adequately represent the interests of the stockholders similarly situated.

## JURISDICTION OVER THE SUBJECT MATTER

The defendants' first ground, i. e., lack of jurisdiction over the subject matter of the action, is, essentially, an attack upon the plaintiff's assertion that Section 27 of the Securities Exchange Act is applicable in this case.[1] The defendants point out that jurisdiction is absent unless the plaintiff has brought, in the language of the statute, a "suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder". It stresses that there must be "a federal question, not in mere form, but in substance, and not in mere assertion, but in essence and effect."[2]

The defendants contend that the complaint is nothing more than a common law action for breach of fiduciary duty, neither covered by, nor within the intended reach of the federal statutes and rules upon which the plaintiff relies. They conclude that the jurisdiction which Section 27 of the Securities Exchange Act would otherwise confer is, in the absence of an appropriate federal claim, unavailable here.

It seems clear from the foregoing that the defendants' "first" ground for dismissal, i. e., lack of jurisdiction, is not a wholly independent ground, but rather depends upon the disposition of the "second" asserted ground for dismissal, i. e., failure to state a claim under Section 10(b) of the Securities Exchange Act and Rule 10B–5, promulgated thereunder.

If the complaint fails to state a claim under the Act, the court may dismiss either upon that ground, or upon the ground of lack of jurisdiction. On the other hand, if a good claim is stated, then the court has jurisdiction over it, and may not dismiss on either ground.

Accordingly, the court proceeds to consider the defendants' "second" ground.

## FAILURE TO STATE A CAUSE OF ACTION

In urging that the plaintiff has failed to state a good cause of action, the defendants place primary reliance on three of four decisions of the court of appeals

---

1. Section 27 of the Securities Exchange Act, 15 U.S.C. § 7aa, provides, in part: "The district courts of the United States, * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder * * *.

2. Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 397, 40 S.Ct. 404, 408, 64 L.Ed. 626 (1920).

for this circuit, viz., Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), cert. den., 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1953); O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965), cert. den., 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); and attempt to distinguish the fourth, Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964).

These decisions provide the framework within which this motion is to be decided. In working within this framework, the undersigned is guided by recent decisions in this district court, in which the rules contained in the above-mentioned decisions of the court of appeals have been applied. These include Barnett v. Anaconda Co., 238 F.Supp. 766 (S.D.N.Y. 1965), and Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965).

In opposing the motion to dismiss, the plaintiff supports its position by reference to Barnett v. Anaconda Co., supra, which it cites as correctly summarizing the principles of Ruckle v. Roto American Corporation, supra; O'Neill v. Maytag, supra, and List v. Fashion Park, Inc., supra, and contends that, as set out in *Barnett,* the requirements for stating a good claim under § 10(b) have been met in this case.

The defendants' several arguments will now be considered. The defendants' first argument focuses on the question of the status of the plaintiff. They note that Birnbaum v. Newport Steel Corp., supra, requires that the plaintiff must have been a purchaser or a seller of securities. Indeed, it is stated in the *Birnbaum* opinion [3] that:

"Rule X–10B–5 extended protection only to the defrauded purchaser or seller. Since the complaint failed to allege that any of the plaintiffs fell within either class, the judgment of the district court was correct and is accordingly affirmed."

The defendants evidently question whether the issuing corporation, on behalf of whom this derivative action is brought, may qualify under the Act as "the 'seller?' of its own stock" [sic]. That question would seem to have been definitively answered in the affirmative, in Ruckle v. Roto American Corp.: [4]

"There is, however, no support * * for the proposition that when a corporation is actually defrauded into issuing securities, a question to which we will presently turn our attention, it still cannot sue under Section 10(b) or Rule 10B–5. Barring suit by a corporation defrauded under those circumstances would, as a legal and practical matter, destroy any remedy against the perpetrator of the fraud. Suits by individual shareholders would either run afoul of privity requirements, cf. Joseph v. Farnsworth Radio & Television Corp., S.D.N.Y., 1951, 99 F.Supp. 701, affirmed, 2 Cir., 1952, 198 F.2d 883, or result in smaller recoveries based on loss to individual investments, which would also be difficult to compute.

"Moreover, Birnbaum indicated that the dominant purpose of the promulgation of Rule 10B–5 was to extend federal protection to sellers as well as purchasers. It cannot be that the federal regulatory scheme is promoted by allowing a private person to sue, though the fraud complained of may relate not to the stock he sells but to the consideration he receives, see Errion v. Connell, 9 Cir., 1956, 236 F.2d 447, but not a defrauded corporation. In the latter case, it is far more likely that, as a result of the fraud perpetrated upon the issuing corporation, overvalued stock may reach the market. Of course, it was precisely the fear that such securities would be publicly distributed which prompted Congress to enact the federal securities laws."

As a second matter, the defendants raise the issue of whether there has been

---

3. 193 F.2d at p. 464.

4. 339 F.2d at p. 28.

pleaded, with sufficient particularity,[5] that the defendants have been guilty of acts of fraud, deception, or other affirmative misrepresentations, or omissions of material facts. The defendants cite O'Neill v. Maytag, supra, in support of the requirement of such allegations. It was said there [6] that

"At least where the duty allegedly breached is only the general duty existing among corporate officers, directors, and shareholders, no cause of action is stated under Rule 10b–5 unless there is an allegation of facts amounting to deception."

■ Upon examination of the complaint herein, the court is satisfied that the allegations do set forth with sufficient clarity and particularity a claim of deception consisting in the omission of material facts. The plaintiff contends, in paragraph 18 of its complaint, that in its notice the defendant "omitted to state material facts necessary in order to make the statements made therein, in the light of the circumstances under which they were made, not misleading, and constituted an act, practice and course of business which operated or would operate as a fraud or deceit." The paragraph then goes on to recite eight specific omissions, respecting the details of the option agreement, including price, date, duration and scope of the agreement, which it claims are material.

In the face of such express allegations, the defendants' characterization of the plaintiff's complaint as insufficient and conclusory must be rejected.

■■ The defendants have attempted to distinguish Ruckle v. Roto American Corp., supra, where the plaintiff's complaint was held to state a cause of action, on the ground that the deception there alleged was practiced upon some members of the board of directors by others on the same board, while the deception alleged here was practiced upon shareholders. Considering the circumstances of both cases, the distinction is at best superficial. The underlying similarities are of more practical consequence and should control. For in both *Ruckle* and the case before the court, the deception is alleged to have been practiced on those elements of the corporation (directors in *Ruckle* and shareholders here) whose affirmative action (voting) was necessary to accomplish the transaction in question. In both situations, the corporation is alleged to have been "deceived," in the only sense in which a fictional legal person can be deceived, i. e., through deception practiced upon those real persons through whom it acts.[7] In the case before the court, the corporation cannot be said to have "acted" any the less because it acted through its shareholders, rather than through its directors. Such shareholder action was as necessary here as was the board action in *Ruckle*, and as effective in its result.

■ As a third matter, the defendants insist that a causal relation between

---

5. Rule 9(b) Fed.R.Civ.P.

6. 339 F.2d at 767–768.

7. A similar point of view was expressed in Simon v. New Haven Board & Carton Co., 250 F.Supp. 297, 299 (D.Conn.1966), where the court said:

"While recognizing the current trend of the authorities, defendants argue reasonable limits would be breached if the Rule is applied to a fraud upon a corporation when acting through its stockholders. The Court disagrees. The Rule provides civil redress for damage to a corporation resulting from deception in the disclosure of information which affects corporate decisions in the purchase and sale of securities. In *Ruckle*, members of the board of directors were deceived by the fraudulent failure to disclose information; here, stockholders were. Both cases involve fraud upon the decision-making body of the corporation. The result in both is the same—injury to the corporation. in this Court's opinion the difference in the acting corporate body is not sufficient to warrant a result dissimilar to *Ruckle*. All information reasonably relevant to a rational investment must be disclosed to the decision-making body, whether that body be composed of directors, officers or shareholders of the corporation."

the fraud and deception alleged and the claimed damages suffered be shown.[8] Of course, the defendants may not require that such causation be proved on the face of the complaint itself. Causation is a matter to be developed and proved at trial.[9] What the defendants may require, however, is that the facts alleged in the complaint are not on their face inconsistent with any alleged or implied causation. If causation may be reasonably inferred from the facts as alleged, the complaint may not be rejected on the proffered ground.

With respect to the question of causation, the following observations would seem to be in order.

In Barnett v. Anaconda Co., 238 F. Supp. 766 (S.D.N.Y.1965), a fact pattern prevailed that was similar, in some respects, to that involved in this case. There, as here, a minority shareholder brought suit on behalf of the corporation for damages resulting from a sale of shares by the corporation for value allegedly below fair market value, alleging, as here, fraudulent and deceptive omissions in the notice of the shareholder's meeting at which the transaction in question was to be approved.

Unlike the case here, however, no allegation was made in support of a causal connection between the alleged fraud and the subsequent ratification of the agreement. On the contrary, it was affirmatively alleged in the complaint that the majority shareholders owned "upwards of 73% of the outstanding capital stock" of the corporation, and duly noted in the opinion that any deception practiced on the minority "could not conceivably have influenced the result at the meeting."[10]

In the case now before the court, both influence and causal effect are expressly alleged, and further, are not in-

consistent with other alleged facts. Specifically, the plaintiff alleges that the issued and outstanding shares would not have been obtainable without the proxies procured through use of the allegedly defective notice and that a majority of the stockholders would not have ratified the stock option if they had knowledge of the omissions in the notice. Such express and potentially provable allegations of causality are surely sufficient to avoid dismissal.

This court will not, however, go so far as to say that such allegations are necessary, nor that allegations of some lesser or minimal causal nexus would not be sufficient. Let such an inference, not necessary to the decision of this motion, be drawn, it is noted here that the *Barnett* decision dealt with two sections of the Securities Exchange Act, § 14(a) as well as § 10(b), while we deal here only with § 10(b). And it was only with respect to § 14(a) that the "necessity for causation"[11] was rigorously construed. With regard to § 10(b), the requirement was voiced as only "*some* causal relationship to the damage complained of."[12] [Emphasis added.] The court in *Barnett* expressly refrained from deciding whether the causal connection required must rise to the level of proximate cause, since no causal connection whatsoever had been alleged.[13] Moreover, in view of the holding in *Ruckle*, where only a minority of the board of directors was alleged to have been deceived by the majority, and in view of the observation in both *Ruckle* and Heilbrunn v. Hanover Equities Corp., supra note 9, that a corporation "may be defrauded by *all* its directors" (emphasis added), it would seem ill-advised to assert that allegations of strict causality, in terms of deception of more than 50% of those voting, or of a sufficient number to effect the intended result, are required

8. List v. Fashion Park, Inc., 340 F.2d 457 (2d Cir. 1965); Hoover v. Allen, 241 F. Supp. 213, 229 (S.D.N.Y.1965).

9. J. I. Case Co. v. Borak, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Heilbrunn v. Hanover Equities Corp., 259 F.Supp. 936, 938 (S.D.N.Y.1966).

10. 238 F.Supp. at p. 771.

11. 238 F.Supp. at p. 772.

12. Id. at p. 775.

13. Ibid.

in all cases to establish a cause of action under § 10(b). But whether required or not, such allegations have been made here.

In the *Barnett* case, the court analyzed the previously cited series of cases of our court of appeals and concluded as follows: [14]

"The rule to be derived from these cases then is that in order to make out a claim under § 10(b) there must be, among other requirements, (1) in connection with the purchase or sale of securities, (2) deception—that is to say fraudulent conduct—by way of affirmative misrepresentation or omission of material facts, (3) that has at least some causal relationship to the damage complained of."

The plaintiff in this case has satisfied all three elements of this rule in its complaint.

██ To summarize, the court is satisfied that what the plaintiff is alleging is that the corporation, in whose behalf the suit is being brought, was damaged by means of entry into an option agreement with its president which required the sale to him of newly issued shares at a price substantially lower than market; that ratification of this agreement was procured by way of fraud and deceit upon shareholders; that shareholders whose votes were necessary to a majority were deceived; and that the fraud and deceit consisted in the omission of such material items as price, date, duration and number of shares involved in the agreement.

The foregoing allegations are sufficient to state a cause of action under § 10(b) of the Securities Exchange Act and Rule 10B–5 promulgated thereunder.

Accordingly, the defendants' motion to dismiss the complaint on the ground of failure to state a cause of action is denied.

██ As indicated above, the defendants' motion to dismiss on the ground of lack of jurisdiction under Section 27 of the Securities Exchange Act is dependent, in this case, upon the success or failure of the motion to dismiss for failure to state a good cause of action under § 10(b) of the Act. Having ruled for the plaintiff on the latter issue, it follows that the defendants' motion to dismiss on the ground of lack of jurisdiction must be similarly denied.

## THE REPRESENTATIVE CAPACITY OF THE PLAINTIFF

We come, finally, to the defendants' third ground for its dismissal motion, the assertion that the plaintiff does not fairly and adequately represent the interest of the stockholders similarly situated in enforcing the rights of the defendant Techmation Corporation.

In this connection, the defendants assert that the plaintiff "a trader in securities of various corporations, owns directly or indirectly stock interests in an enterprise" with which the defendant TECHMATION is currently negotiating regarding a possible contract arrangement. The defendants conclude that the plaintiff "has interests different from and *perhaps* in conflict with those of TECHMATION." [Emphasis added.]

██ The plaintiff's representative qualifications can not be impugned by means of hypothetical conflicts of interest in certain business dealings that have no obvious or demonstrated connection with the matter in suit. The defendants have shown no reason why the plaintiff does not fairly and adequately represent the interests of the stockholders similarly situated in this case.

The defendants' motion to dismiss on this latter ground, as well as on all other grounds raised on this motion, is therefore denied.

So ordered.

14. 238 F.Supp. at p. 775.