Simon **KAMINSKY**, Plaintiff,

v.

Benjamin **ABRAMS**, Max Abrams, Stanley L. Abrams, Joseph T. Dineen, Dorman D. Israel, Simon H. Rifkind, Percy West, Mary Abrams, C. Russell Feldmann, Joseph V. McKee, Jr., Ralph J. Guda, Arthur H. Dean, Fred Abrams, Abraham A. Vogel, Martin Richmond, Joseph Kattan and Emerson Radio and Phonograph Corporation, Defendants.

No. 66 Civ. 221.

United States District Court
S. D. New York.

Feb. 21, 1968.

Abraham I. Markowitz, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Stanley L. Abrams, Joseph T. Dineen and Mary Abrams; Paul J. Newlon, New York City, and Doris Carroll, of counsel.

MANSFIELD, District Judge.

In this derivative action, plaintiff, an Emerson Radio and Phonograph Corporation (Emerson) stockholder, asserts that Emerson has been defrauded in contravention of various provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934, and seeks recovery against members of the Board of Directors and Mrs. Mary Abrams, the widow of Louis Abrams (Abrams), a founder, director, officer and active executive of Emerson, and a member of the family which controlled Emerson from 1924 until his death in 1963. No diversity jurisdiction is asserted.

The alleged injury arises out of a 1956 oral agreement entered into between Emerson and Abrams for the payment of "reasonable" death benefits to his family, should he die while in the employ of Emerson or its subsidiaries, in consideration of Abrams' continuing in Emerson's employ. The agreement was entered into on the occasion of the liquidation of the Emerson-New York division, by which Abrams had been employed, which resulted in termination of his pension plan and death benefit coverage. Following Abrams' death in 1963, Emerson's Board of Directors adopted a resolution to pay his widow, Mrs. Abrams, $10,000 a year for ten years or for her life, whichever was shorter. To date, she has been paid $20,000.

Plaintiff contends that the failure to report the agreement to Emerson's stockholders in its annual reports and proxy statements; to the Securities and Exchange Commission (the Commission); and to the New York Stock Exchange, with which Emerson has been listed, violated § 17(a) of the Securities Act, 15 U.S.C.A. § 77q(a), and §§ 10(b), 12(b) (1), 13(a) (1), 14(a), 20, 29 and 32(a) of the Securities Exchange Act, 15 U.S. C.A. §§ 78j(b), 78l(b) (1), 78m(a) (1), 78n(a), 78t, 78cc and 78ff. As a result of these alleged violations, plaintiff seeks damages and an injunction against further payments to Mrs. Abrams under the agreement.

*Plaintiff's Failure to Make a Demand in Compliance with Rule 23.1, F.R.Civ.P.*

■■ The defendants move, pursuant to Rule 12(b) (6), F.R.C.P., to dismiss the complaint for failure to state a claim upon which relief can be granted. Their first attack is founded on the contention that plaintiff's failure to make a demand upon Emerson's directors constituted non-compliance with Rule 23.1, F.R.C.P. Plaintiff alleges that National, the corporation now controlling Emerson, would not find it in its own interest to commence the action against its own nominee directors, some of whom had been on Emerson's Board continuously during and after 1956, and that an action brought by Emerson would be in hostile hands and not diligently prosecuted. In an earlier decision in this case, Kaminsky v. Abrams, 41 F.R.D. 168 (S.D.N.Y.1966), Judge Tenney ruled that the complaint's allegations were sufficient to justify plaintiff's refusal to make a demand upon Emerson or its Board. Although the law of the case doctrine does not bind a subsequent court faced with the same issue, LeRoy v. Sabena Belgian World Airlines, 344 F.2d 266 (2d Cir. 1965); Dictograph Prods. Co. v. Sonotone Corp., 230 F.2d 131 (2d Cir.) (L. Hand, J.), cert. denied, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956), the allegations, if proved, would be sufficient to dispense with the necessity for a demand. Gottesman v. General Motors Corp., 268 F.2d 194 (2d Cir. 1959); Cathedral Estates v. Taft Realty Corp., 228 F.2d 85 (2d Cir. 1955); Heilbrunn v. Hanover Equities Corp., 259 F.Supp. 936 (S.D.N.Y.1966). Although the Court has the power to treat defendants' present motion as one for summary judgment pursuant to Rule 56, F.R.C.P., and might, on the basis of undisputed affidavit proof, dismiss the action for failure to show facts supporting

the allegation that demand would be futile, the insufficiency of the complaint in other respects noted below makes it unnecessary to disturb Judge Tenney's ruling.

### The Alleged Violation of §§ 17(a) of the Securities Act and 10(b) of the Exchange Act

■ Plaintiff argues that defendants' oral agreement with Louis Abrams and the 1963 Board of Directors Resolution constitute a "security" within the meaning of § 17(a) of the Securities Act, 15 U.S.C.A. § 77q(a), § 10(b) of the Exchange Act, 15 U.S.C.A. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, so that the directors' failure to disclose occurred "in connection with the sale of a security". We doubt that the oral agreement and subsequent Board resolution constituted a "security" as defined in § 2(1) of the Securities Act, and § 3(a) (10) of the Exchange Act, because of the absence of any monetary investment in return for the death benefit agreement. See Tcherepnin v. Knight, 389 U.S. 332, 338, 88 S.Ct. 548, 19 L. Ed.2d 564 (1967) (test is whether scheme involves use of others' money on the promise of profits); but see SEC v. Addison, 194 F.Supp. 709, 716, 722 (N.D. Texas 1961). However, even if plaintiff's contention is accepted *arguendo*, the complaint is defective because of its failure to allege or show that Emerson has been damaged by the non-disclosure of the pension arrangement. Barnett v. Anaconda Co., 238 F.Supp. 766, 771–772 (S.D.N.Y.1966). There is no allegation, for instance, that the arrangement with Abrams was unfair to Emerson in terms of the services that he furnished to it. On the contrary, an agreement to pay such a modest sum to the widow would appear on its face to be eminently reasonable. Nor is there any suggestion that Emerson's Board lacked authority to make the arrangement, or that the matter was one calling for shareholder approval, see Globus, Inc. v. Jaroff, 266 F.Supp. 524 (S.D.N.Y.1967). In fact, the New York County Supreme Court has ruled to the contrary. Kaminsky v. Abrams, N. Y. Law Journal, p. 16 (Sup.Ct. Oct. 11, 1965) (waste of corporate assets claim dismissed). There is no claim that the Board, who had authority, lacked or were deprived of necessary information with which to arrive at an intelligent and rational decision. See Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964); Bromberg, Securities Law Fraud § 4.7 at 85 nn. 70–71 (1967).

■ In the absence of a contention that those authorized to make the corporate decision were themselves victims of false, misleading or deceptive conduct, or that disclosure would have caused them to act differently, a cause of action is not made out. Schoenbaum v. Firstbrook, 268 F.Supp. 385 (S.D.N.Y. 1967). The antifraud provisions of the Securities and Exchange Acts may not be invoked as an alternative means of remedying every alleged breach of fiduciary duty. See O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952); Lester v. Preco Industries, Inc., 282 F.Supp. 459 (S.D.N.Y.1965); Bromberg, supra at 83–84 n. 65. To so hold would be to treat §§ 17(a), 10(b) and Rule 10b–5 as mandates for the federal courts to inquire into every managerial decision, which they are not.

■■ The fiduciary responsibilities of corporate directors are in the first instance defined by the law of the state of incorporation. Federal securities legislation supersedes state corporate law remedies only to the extent of any direct conflict between the two, § 28(a), Securities Exchange Act, 15 U.S.C.A. § 78bb(a); Errion v. Connell, 236 F.2d 447, 453–454 (9th Cir. 1956); McCollum v. Billings, 53 Misc.2d 661, 279 N.Y.S.2d 609 (1967); Fleischer, "Federal Corporation Law, An Assessment," 78 Harv.L.Rev. 1146, 1153 (1965); cf. Rice v. Sante Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), and unless a matter is clearly covered exclusively by fed-

eral statute, it is deemed to be subject to state law. If Congress had intended to preempt the entire field, "so revolutionary a federal intervention", Loss says, "would presumably have been clearly expressed", II Loss, Securities Regulation 903. Thus, although federal securities laws have been construed broadly in the light of their remedial purposes, see J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963), they remain "incomplete and interstitial" in nature, Mishkin, The Variousness of "Federal Law," 105 U. of Pa. L.Rev. 797, 811 (1957), and do not represent a federal corporate law with respect to responsibility of officers and directors that has supremacy over state law, which Congress has never adopted. See Friendly, "In Praise of Erie—and of the New Federal Common Law," 39 N.Y. U.L.Rev. 383, 413–14 (1964).

■ The state courts have long assumed active jurisdiction over suits charging breaches of fiduciary duty involving the dissipation of corporate assets, developing a well-articulated body of applicable law. See, e. g., Globe Woolen Co. v. Utica Gas & Elec. Co., 224 N.Y. 483, 121 N.E. 378 (1918) (Cardozo, J.); Smith v. Dunlap, 269 Ala. 97, 111 So.2d 1 (1959); Maclary v. Pleasant Hills, Inc., 35 Del.Ch. 39, 109 A.2d 830 (1954); Darmana v. New Orleans Stock Yard, Inc., 226 La. 897, 77 So.2d 528 (1954); Berkwitz v. Humphrey, 163 F.Supp. 78 (N.D.Ohio 1958) (applying Ohio law). In the absence of a more explicit Congressional directive, this Court hesitates to take a step that might well lead the states to abandon their creative and effective role in this area of the law. See Hart, The Relations Between State and Federal Law, 54 Colum.L.Rev. 489, 525–28, 534 (1954); Investment Associates,

Inc. v. Standard Power & Light Corp., 29 Del.Ch. 225, 48 A.2d 501 (Ch. 1946), affd., 29 Del.Ch. 593, 51 A.2d 572 (Sup. Ct.1947), noted in Loss, The SEC Proxy Rules and State Law, 73 Harv.L.Rev. 1249, 1254–63 (1960). Where, as here, the sale of an alleged "security" (i. e., the transfer to Abrams of the right to periodic death benefits for his family) is only peripherally connected with the major mismanagement issues, see Pettit v. American Stock Exchange, 217 F. Supp. 21, 25 (S.D.N.Y.1963) (dictum), plaintiff is not entitled to have two remedies, one state, the other federal, for what is, in essence, the same claim. See Fleischer, supra at 1157–58. For these reasons, plaintiff's complaint fails to state a claim for violations of § 17(a) of the Securities Act and § 10(b) of the Securities Exchange Act.

### The Alleged Violation of §§ 12(b) and 13(a) of the Securities Act

■■ The reporting requirements of § 12(b) of the Exchange Act apply only at the time of initial listing of a security on a national securities exchange. Since the plaintiff's complaint and brief concede that Emerson's capital stock had been listed on the New York Stock Exchange long before July, 1956, when the Abrams death benefit agreement was entered into (Complaint Par. 7; Plf's Brief, p. 12), the failure to disclose the agreement in the § 12(b) reports could not have violated § 12(b).

Nevertheless § 13(a) requires the issuer of a security registered on a national exchange to file reports in accordance with SEC rules and regulations in order to keep the § 12(b) reports reasonably current. Violation of § 13(a)'s reporting requirements has been held by this Court to give rise to a private cause of action. Kroese v. Crawford, '61–'64 CCH Fed.Sec.L.Rep. ¶ 91,262 (S.D.N.Y. 1963). Item 7[1] of the 10K Report, 17

---

1. "(b) Furnish the following information, in substantially the tabular form indicated below, as to all pension or retirement benefits proposed to be paid under any existing plan in event of retirement at normal retirement date, directly or indirectly, by the registrant or any of its subsidiaries to each [director whose aggregate direct remuneration exceeded $30,-000]. * * *

C.F.R. § 249.310, imposes the obligation of disclosing all pension, retirement payments and all other remuneration payments proposed to be made in the future to directors earning in excess of $30,000 annually. Furthermore, remuneration payments must be disclosed with respect to all directors, although these are to be lumped together without naming the directors. However, the 10K form states that these reporting requirements are not to be complied with for those years in which the registrant has filed with the Commission a definitive proxy statement pursuant to Regulation 14A, 17 C.F.R. § 240.14a–1 to § 240.14a–102.

Since the defendants have filed affidavits which have a conclusive bearing on the § 13(a) count, the Court, in its discretion, will treat defendants' 12(b) (6) motion as a motion for summary judgment. Larsen v. American Airlines, 313 F.2d 599, 601 (2d Cir. 1963); Cook v. Hirschberg, 258 F.2d 56, 57–58 (2d Cir. 1958) (Clark, C. J.). From defendants' attorney's affidavit, it appears that Emerson has filed a definitive proxy statement with the SEC for every year from 1956 until the company was merged into National Union Electric Corporation in May, 1966 (Newlon Affidavit, p. 9; Feldman Affidavit, p. 1). Plaintiff has not come forward with any affidavit denying these facts. On the contrary, his complaint asserts that for every year since 1956, Emerson engaged in proxy solicitation for the election of directors. It must be concluded that Emerson filed definitive proxy statements with the SEC for every year since 1956, thereby avoiding the need to disclose the Abrams agreement pursuant to the § 13(a) reports.

### The Alleged Violation of § 14(a) of The Exchange Act

Item 7 of Schedule 14A, adopted under the Commission's rulemaking

power authorized by § 14(a), requires that the proxy statement furnished to stockholders include the same information with respect to director remuneration as that required in the 10K report previously discussed.

J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), held that a private right of action exists to remedy violations of § 14(a) of the Exchange Act, 15 U.S.C.A. § 78n(a), which proscribes proxy solicitation in contravention of Commission rules and regulations. However, *Borak* and its progeny, e. g., Cohen v. Colvin, 266 F. Supp. 677, 685 (S.D.N.Y.1967); Hoover v. Allen, 241 F.Supp. 213, 230 (S.D.N.Y. 1965); Barnett v. Anaconda Co., 238 F. Supp. 766, 771 (S.D.N.Y.1965), have all required that plaintiff demonstrate "but for" causation, i. e., that the corporate action would not have occurred in the absence of the alleged violation of the proxy rules. Plaintiff's complaint fails to make such an allegation, claiming merely that defendants' failure to disclose the agreement with Louis Abrams "in violation of the aforementioned sections of the Acts * * * acted as a fraud upon Emerson [and its] stockholders." Furthermore, in view of the facts asserted in the affidavits in support of defendants' motion, it appears unlikely that the essential allegation as to causation could in good faith be made. Accordingly, in the absence of an allegation that disclosure in the proxy statements would have caused the Board of Directors not to enter into the death benefit arrangement, or would have caused the shareholders to vote out the Board and elect one that would not have countenanced the agreement, plaintiff has failed to state a claim under § 14(a) of the Exchange Act.

---

"(c) Describe briefly all remuneration payments (other than direct remuneration for services and pension or retirement benefits) proposed to be made in the future directly or indirectly by the registrant or any of its subsidiaries pursuant to any existing plan or arrangement to (i) [each director whose aggregate direct remuneration exceeded $30,000], naming each such person, and (ii) all directors and officers of the registrant as a group, without naming them."

*Plaintiff's Claim that § 29(b) of the Exchange Act Renders the Death Benefit Agreement Void*

■ It is unnecessary to dwell at length on plaintiff's attempt to invalidate the death benefits agreement on the ground that its performance or the continuance of the relationship or practice is in violation of § 29(b), 15 U.S.C.A. § 78cc(b).[2] Plaintiff's contention is that insofar as the complaint states a claim for violation of the proxy requirements of § 14(a), § 29(b) voids Mrs. Abrams' contract rights under the death benefit agreement.

However, even on the assumption that plaintiff alleges a violation of the disclosure requirements, § 29(b) does not apply to the facts of this case.

Subsection (1) is inapplicable because Mrs. Abrams did not make the contract; the agreement was arrived at between Louis Abrams and Emerson. In addition, Mrs. Abrams' receipt of the $10,-000 annual payments does not amount to "performance of such contract." Moreover, this subsection voids the rights only of those who violate the provisions of the statute. Greater Iowa Corp. v. McLendon, 378 F.2d 783, 792 (8th Cir. 1967). Since there is no allegation that Mrs. Abrams, who had never been an Emerson officer or director, participated in the failure to disclose the contract in violation of the proxy rules, this subsection does not void her rights.

Subsection (2) is inapplicable because the complaint does not allege that Mrs. Abrams acquired her rights with actual knowledge of the facts by reason of which the performance of the contract violated the proxy rules. Thus the complaint fails to state facts sufficient to deprive Mrs. Abrams of her rights, even if a good

claim had been set forth with respect to the other defendants.

For the foregoing reasons, defendants' motion to dismiss the complaint is granted. With respect to the § 13(a) claim, the motion, having been treated as a motion for summary judgment, is granted.

So ordered.

---

2. A contract violating the Exchange Act is void

"(1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract. and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation * * *."