UNITED STATES of America, Plaintiff,

v.

Joshua EILBERG, Defendant.

Civ. A. No. 81–1693.

United States District Court,
District of Columbia.

Oct. 19, 1981.

Gary Tilles, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff.

Thomas Colas Carroll, Philadelphia, Pa., Brian P. Murphy, Washington, D.C., for Eilberg.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court on a motion to quash a deposition subpoena served upon the Honorable Edmund L. Henshaw, Jr., Clerk of the United States House of Representatives. The defendant in this case, Representative Joshua Eilberg, has intervened in the motion to quash of the Clerk. For the reasons expressed below, the motion is denied.

*Background*

The current dispute stems directly from a civil case pending in the Eastern District of Pennsylvania, in which the United States has sued Representative Eilberg for funds allegedly owed the government. *United States v. Eilberg,* 507 F.Supp. 267 (E.D.Pa.). The third count of the complaint, grounded in the False Claims Act, 31 U.S.C. § 231 *et seq.,* alleges that Representative Eilberg

falsely certified that numerous telephone calls charged to his congressional office were "official," when actually those calls dealt with matters entirely unrelated to Representative Eilberg's congressional responsibilities.

On August 10, 1979, the United States Attorney for the Eastern District of Pennsylvania filed a motion for a determination of materiality and relevancy of documents. Such a determination is required by House Resolution No. 10, as a prerequisite to the issuance of a subpoena to the Clerk of the House of Representatives. H.Res. 10, 96th Cong., 1st Sess., 125 Cong.Rec.H. 17 (daily ed. Jan. 15, 1979).[1] The subject matter of the United States Attorney's motion and the subpoena now under scrutiny, include:

Any and all billings and other records maintained by the Clerk . . . relating to telephone calls from or charged to the office of former Representative Joshua Eilberg . . . for the period from and including January of 1978; and all controlling House regulations pertaining to such billings and records.

Pursuant to local rule, the United States notified the Clerk of the House that the motion for a determination of relevancy and materiality had been filed and the Clerk was given an opportunity to file an opposition. The Clerk filed a lengthy memorandum in response, arguing that the government's underlying claim and, therefore, the desired subpoena raise a non-justiciable, political question. The essence of the Clerk's argument was that the question of whether particular phone calls are "official" is a matter reserved solely for the House under the Constitution's Rulemaking Clause, Article I § 5, Cl. 2. Concomitantly, the Clerk urged, a court could not discern adequate standards for assessing the executive's contention that particular phone calls were not within the realm of official congressional activity.

The United States Attorney responded that it is not unconstitutional for the executive to bring civil actions against congressional members when a statute, such as the False Claims Act, delegates to the executive the authority to police against violations of House rules and regulations. In supporting his argument, the United States Attorney referred Judge Pollack to a statute which he claimed expressly delegates to the executive and judicial branches the responsibility for ascertaining the legality of congresspersons' telephone calls. That statute, 2 U.S.C. § 46g provides, in pertinent part, that "there shall be paid out of the contingent fund . . . such amount as may be necessary to pay (1) toll charges on strictly official long distance telephone calls." The United States contended that by enacting this legislation the Congress clearly intended that individual members be subjected to judicial enforcement actions for phone calls determined by the executive and the courts not to be "strictly official."

There followed a series of written exchanges between the Clerk and the United States concerning the present legal validity and effect of 2 U.S.C. § 46g. This debate focused on the Committee on House Administration's apparent abandonment of the stipulations in the provision and the impact of 2 U.S.C. § 57 on section 46g's current validity. On its face, section 57 completely apportions responsibility for assessing the legitimacy of members' phone calls between the full House and the Administration Committee, leaving no role for the Department of Justice.

On October 22, 1980, Judge Pollack issued an extensive opinion on the case, the vast majority of which focused on the motion for a determination of relevancy and materiality. The court ruled on the motion in favor of the United States, concluding that sec-

---

1. There is considerable dispute between the parties as to whether the motion for a determination of relevancy and materiality was *required* to have been submitted to Judge Pollack or whether it could have awaited this court's consideration and accompanied the actual subpoena. Because the Clerk has not argued that

Judge Pollack was legally precluded from entertaining and ruling on the motion, there is no apparent reason for the court to reach the question of the government's obligation to submit the motion to Judge Pollack for consideration.

tion 46g was still valid law and therefore, the executive had been delegated the power to sue members of Congress for phone calls not "strictly official." Further, Judge Pollack found that this delegation does not contravene the constitutional scheme of separation of powers. Emphasizing heavily the decision in *United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972), Judge Pollack determined that a clear provision of authority to the executive to "police" members' extralegislative activities (as he found section 46g to be) is not barred by the Constitution.

Relying on Judge Pollack's favorable ruling on the motion for a determination of materiality and relevancy, on April 6, 1981, the United States Attorney served the Clerk of the House of Representatives with a deposition subpoena issuing from this court, which ordered the production of the documents described earlier. See pp. 1–2, *supra.* On May 11, 1981, the Clerk filed the motion to quash which is the present focus of this controversy. On June 23, 1981, Representative Eilberg intervened in the motion to quash.

*Discussion*

█ It is clear that the Clerk's motion to quash the deposition subpoena seeks to have this court reconsider arguments exhaustively made to and considered by Judge Pollack. Ordinarily, under the doctrine of "law of the case," a court should refrain from deciding issues that have already been definitively resolved by itself or another court. While the doctrine does not jurisdictionally *bar* a court from reconsidering issues previously concluded, as does the related doctrine of *res judicata,* the principle of law of the case directs a court not to alter a previous judicial determination unless unusual circumstances are present. *See Southern Railway Co. v. Clift,* 260 U.S. 316, 43 S.Ct. 126, 67 L.Ed. 283 (1922); *Messenger v. Anderson,* 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912). The carefully circumscribed discretion with which a court should approach an issue already reached was recently described by our Circuit Court in *Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578 (D.C.Cir.1980):

"If justice is to be served, there must be at some point an end to litigation; on that account, the power to recall mandates should be exercised sparingly. To warrant divergence from law of the case, a court must not only be convinced that ... an .... earlier decision was erroneous; it must also be satisfied that adherence to the law of the case will work a grave injustice."

642 F.2d at 585. *See also Greater Boston Television Corp. v. FTC,* 463 F.2d 268 (1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2042, 32 L.Ed.2d 338 (1972).

These general tenets of the law of the case have been applied to situations where a federal district judge is presented with a prior decision of another district judge. The accepted doctrine, consistent with the principles just expressed, is that a district judge has power to overrule or ignore an earlier decision but this power should only be used in extraordinary circumstances. *See, e.g., Petition of United States Steel Corp.,* 479 F.2d 489 (6th Cir.1973); *Petition of Kinsman Transit Co.,* 388 F.2d 821 (2d Cir.1968); *Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107,* 349 F.Supp. 436 (E.D.Pa.1972); *Kaminsky v. Abrams,* 281 F.Supp. 501 (S.D.N.Y.1968); *Peterson v. Hopson,* 306 Mass. 597, 603, 29 N.E.2d 140, 142 (1940) ("A judge should hesitate to undo his own work ... Still more should he hesitate to undo the work of another judge.").

█ Of even more direct bearing on the case at hand, a district judge acting in aid of a proceeding in another district court will defer to the law of the case established by that court, unless clearly compelling reasons for not doing so exist. *See, e.g., Compton v. Societe Eurosuisse, S.A.,* 494 F.Supp. 836 (S.D.Fla.1980) (where federal judge previously authorizing subpoena had "meticulously" considered all information and arguments, that judge's decision must be followed as the law of the case); *Steamship Co. of 1949 v. China Union Lines, Hong Kong,* 123 F.Supp. 802 (S.D.N.Y.1954) (validity of subpoena and examination there-

under established by prior ruling of Texas federal court).

■ Applying these guidelines to the instant subpoena, it is evident that Judge Pollack's decision granting the motion for a determination of relevancy and materiality would normally constitute the law of the case in this matter. The ruling on the motion for a determination of relevancy and materiality decided the precise issue presented by the Clerk's motion to quash the subpoena: whether the underlying claim by the United States against Representative Eilberg presents a non-political, justiciable controversy involving the application of discernible judicial standards. *See, e.g., ACF Industries, Inc. v. Guinn,* 384 F.2d 15 (5th Cir.), *cert. denied,* 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1967). Judge Pollack came to his conclusion following complete briefing by the parties. The opinion identified and thoroughly considered all arguments raised by the Clerk, as well as those propounded by the United States Attorney. The opinion painstakingly maps out the circumstances surrounding the passage of sections 46g and 57, prior to determining that section 46g delegates authority to the executive and, derivatively, to the judiciary, to assess whether phone calls of members of Congress are "strictly official." Finally, the opinion, upon consideration of leading Supreme Court precedents, concludes that the delegation discernible in section 46g does not violate separation of powers principles embodied in the Constitution.

Notwithstanding the exhaustive and thoughtful nature of Judge Pollack's opinion, the Clerk of the House of Representatives contends that the law of the case doctrine should not prevent this court from reconsidering the justiciability of the government's claim against Representative Eilberg. In essence, the Clerk suggests that unusual circumstances justify laying aside the law of the case doctrine in this instance.

First, the Clerk argues that the law of the case principle should not be applied because Judge Pollack's determination of materiality and relevancy was neither final nor appealable. This argument misapprehends the doctrine of law of the case. The doctrine does not require as a precondition to its application, the issuance of a final, appealable judgment, resolving all rights and liabilities of the parties. Instead, seeking to minimize expenditure of judicial resources and energy on matters already decided, the doctrine is triggered once a final decision is made on a particular issue. The doctrine is regularly applied to prevent reconsideration of a host of "non-final," nonappealable orders, including rulings which concern pretrial discovery disputes, *see, e.g., SEC v. Timetrust,* 33 F.Supp. 590 (N.D.Cal. 1940), and those involving the entire range of motions made prior to entry of a binding judgment. *See In re Walton Hotel Co.,* 116 F.2d 110 (7th Cir.1940); *Compania Maritima del Nervion v. Amerop Commodities Corp.,* 237 F.Supp. 73 (E.D.Cal.1964).

Thus, while the intermediate status of an order may be a relevant consideration in deciding whether to apply the law of the case doctrine where other unusual circumstances are present, *First National Bank of Hollywood v. American Foam Rubber Corp.,* 530 F.2d 450 (2d Cir.1976), such status alone does not nullify the effect of the doctrine. Accordingly, the fact that Judge Pollack's resolution of the motion for a determination of relevancy and materiality was interim in nature does not in itself undercut the rationale for applying Judge Pollack's decision as the law of the case.[2]

___

**2.** The Clerk's argument on the non-appealable nature of Judge Pollack's ruling goes further. The clerk contends that not only is Judge Pollack's ruling presently non-appealable but that because the Clerk never intervened in the case there will never be a final decision from which he could appeal. The Clerk does not provide any precedent which holds that an interested party's inability to appeal a decision negates the law of the case doctrine. At most, the nonappealability of a ruling would be one factor to be considered in applying the doctrine. Where, as here, the complaining party has received a thorough and complete hearing, and another party, Representative Eilberg, can and will surely appeal any adverse ruling, the doctrine should continue to be applied. Another factor justifying this conclusion is that the

■ Second, the Clerk maintains that this court should reconsider the justiciability issue because Judge Pollack's determination preceded the decision of our Circuit Court in *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 (D.C.Cir.1981). A judge's failure or inability to consider important matters of law or fact is certainly a relevant factor in whether the original ruling should be regarded as the law of the case. *See, e.g., Adley Express Co. v. Highway Truck Drivers & Helpers Local No. 107*, 349 F.Supp. 436 (E.D.Pa.1972); *Goldstein v. Doft*, 236 F.Supp. 730 (S.D.N.Y. 1964). In this instance, however, the Clerk has not raised a new statement of law so contrary to Judge Pollack's decision that his order must be overruled. Instead, the *Cannon* decision is sufficiently distinguishable from the case at hand so that an overall weighing of factors still favors treating Judge Pollack's decision as the law of the case.

*Cannon* involved a False Claims Act action against Senator Cannon. The gravamen of the complaint was that the Senator had authorized his administrative assistant to work exclusively on the Senator's campaign for reelection and that salary payments for such work constituted a fraud on the government. The court concluded that the suit presented a nonjusticiable controversy principally because of the absence of satisfactory standards for assessing whether Senators may use paid staff members in their campaign activities. The court stressed that Senate deliberations revealed that the Senate itself had been completely unable to reach agreement on the propriety of using staff members in reelection campaigns. 642 F.2d at 1380.

In contrast, Judge Pollack found, after a rigorous analysis of legislative developments, that section 46g unequivocally expressed the House's determination that phone calls not "strictly official" cannot be charged to the public coffer. Thus, Judge Pollack found a specific statutorily prescribed standard for judicial assessment of the propriety of Representatives' phone calls, whereas the court in *Cannon* could perceive no coherent Congressional command concerning the legality of employing personnel in reelection campaigns.

The Clerk, however, argues that this distinction is more fictional than real. Essentially, he contends that the "strictly official" language is so vague that it could not genuinely assist a court attempting to analyze the propriety of a Representative's phone calls. Thus, just as the court in *Cannon* could not discern adequate criteria for reviewing salary payments to staffers, there are no standards in this case, even assuming the viability of the "strictly official" directive, for assessing which phone calls constitute a fraud on the United States.

This argument has facial appeal but is not ultimately persuasive. The "strictly official" language, while undoubtedly vague, would be an adequate standard for judicial scrutiny of some phone calls. For example, a phone call from one of Representative Eilberg's relatives to a business associate that concerned the relative's personal business,[3] could certainly be said to run afoul of the "strictly official" standard. Just as clearly, in other situations the "strictly official" standard may not be as susceptible of application. The conclusion to be drawn from this state of facts is not, as the Clerk urges, that the case against Representative Eilberg is utterly non-justiciable because there is an absence of a workable standard for evaluating calls charged to Representative Eilberg's phone. Instead, it suggests

Clerk was, apparently, not barred in any way from intervening in the case in Pennsylvania and thereby preserving a right to appeal from Judge Pollack's holding.

**3.** The Clerk also intimates that it would be impossible for a court to infer from telephone records the subject matter of the phone call and, therefore, whether the calls were "official." Whether the United States could at some point in the future adequately document its allegations of fraud from the present records sought is not properly a subject of consideration with respect to the instant motion to quash. Such a question of proof should be left for Judge Pollack's substantive consideration of the charges against Representative Eilberg.

that the standard prescribed by Congress may be inadequate in some close cases. That, of course, is a matter for Judge Pollack to decide once the government is in possession of the subpoenaed material and attempts to introduce specific phone records into evidence in an effort to document particular violations of the False Claims Act.[4] The only question that needs to be decided at this stage, and the only question reached by Judge Pollack, is the threshold, "overall-question of justiciability," *United States v. Eilberg*, 507 F.Supp. 267 (E.D.Pa.1981) at 287 n. 13; i.e., whether section 46g furnishes an articulable standard for a judicial assessment of the legality of phone calls certified by Representative Eilberg.

In marked contrast to the suit brought against Senator Cannon, the threshold question as to the presence of some manageable standard can be answered in the affirmative in this case. Because *Cannon* is distinguishable from the case at hand in this fundamental fashion, Judge Pollack's inability to consider the *Cannon* opinion in formulating his decision does not deprive his ruling of the "law of the case" status which it is otherwise due.

There is one final conceivable basis for a refusal to accord Judge Pollack's decision for deference it would normally receive. This is the failure of the decision to consider the implications of Representative Eilberg's Speech and Debate Clause rights. As noted, Representative Eilberg has intervened in the Clerk's present motion to quash and he asserts, without explanation, that compelled production of the documents sought will violate the Speech and Debate Clause of the Constitution.

Judge Pollack's opinion does not *expressly* analyze whether Representative Eilberg's rights would be violated by the govern-

ment's investigation into the telephone records being pursued. It is evident, however, that Judge Pollack presumed that the simple subpoena of the documents could not contravene Representative Eilberg's constitutional interests. In note 13 of the opinion, Judge Pollack states that the granting of the motion for a determination of relevancy and materiality is not "to be understood as precluding the Clerk, or Mr. Eilberg, from raising such particularized 'Speech and Debate' contentions as may be thought to render some proposed evidence inadmissible." *United States v. Eilberg*, 507 F.Supp. 267, 287 n. 13 (E.D.Pa.1980). The obvious assumption underlying this statement is that the Speech or Debate Clause may accord Representative Eilberg rights to exclude particular documents from evidence but it in no way curtails the power of the United States to *attain* these records through otherwise legitimate judicial processes.

This assumption is no doubt derived from the opinion of the Third Circuit Court of Appeals in Representative Eilberg's predecessor criminal case, *In Re Grand Jury Investigation*, 587 F.2d 589 (3rd Cir.1978). In that case, the court held that a subpoena for virtually identical phone records to those demanded in this suit was not invalid under the Speech and Debate Clause. The court found that only "the *use* against the Congressman of those portions of the documents which record such legislative acts offends the Speech and Debate Clause." 587 F.2d at 596 (emphasis supplied). In determining that the Speech or Debate Clause basically provides a use of immunity and not a "cloak of secrecy" the court undertook a searching investigation into the rationale for the privilege, as well as available Supreme Court precedent. 587 F.2d at 596–98.

---

4. Indeed, Judge Pollack himself noted that the granting of the motion for a determination of materiality and relevancy "is not to be understood as precluding the Clerk from arguing the 'materiality' and/or the 'relevancy' of particular documents falling within the letter of the United States' broad subpoena." *United States v. Eilberg*, 507 F.Supp. 267 (E.D.Pa.1980) at 287 n. 13. Moreover, it is significant that the United States is seeking through the instant sub-

poena to discover House regulations relevant to the question of allowable telephone billings. The obvious purpose of discovering these regulations is to refine the "strictly official" standard as much as possible. It would be premature to declare that the case brought against Representative Eilberg is non-justiciable before the United States is given an opportunity to analyze and apply the information it is pursuing.

Thus, there can be little question that Judge Pollack's treatment of the Speech or Debate Clause issue actually incorporated the definitive analysis of *In Re Grand Jury Investigation.* Judge Pollack's notation that Speech or Debate Clause concerns must await particularized evidentiary consideration was undoubtedly grounded in the Third Circuit's parallel determination on an essentially identical issue. Judge Pollack's limited discussion of the Speech or Debate Clause question, therefore, should not deprive his ruling of "law of the case" effect; Judge Pollack evidently considered the question and resolved it in accordance with controlling precedent.

*Conclusion*

The United States' motion to Judge Pollack for a determination of relevancy and materiality involved the same justiciability issues that are pertinent to the instant motion to quash. All directly relevant and conceivably dispositive matters of law and fact were presented to and ruled on by Judge Pollack in a thorough and exhaustive opinion. There do not exist any extraordinary conditions that should prevent this court from granting deference to Judge Pollack's findings. As a result, a consideration of all pertinent factors compels the conclusion that Judge Pollack's prior ruling constitutes the law of the case in this matter and should be followed. Accordingly, the Clerk's motion to quash will be denied.