UNITED STATES of America ex rel.
A. Scott POGUE, Plaintiff,

v.

DIABETES TREATMENT CENTERS
OF AMERICA, INC., et al.,
Defendants.

Nos. 99CV3298, 01MS50(RCL).

United States District Court,
District of Columbia.

Dec. 18, 2002.

---

1. Herein identified as Attachments A–F.

James B. Helmer, Jr., Frederick M. Morgan, Jennifer M. Verkamp, Helmer, Martins & Morgan, Cincinnati, OH, Scott A. Powell, Don McKenna, Hare, Wynn, Newell & Newton, Birmingham, AL, for Relator.

Mark E. Nagle, Doris D. Coles–Huff, Assistant United States Attorneys, Michael F. Hertz, Joyce R. Branda, Jonathan L. Diesenhaus, Laura F. Laemmle, Attorneys, Civil Division, U.S. Department of Justice, Washington, DC, for United States.

Bryan E. Larson, Brian D. Roark, Bass, Berry, and Sims PLC, Nashville, TN, Robert J. Walker, Kathryn Hays Sasser, Walker, Bryant, Tipps & Malone, Nashville, TX, for DTCA.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the Court on Diabetes Treatment Centers of America, Inc.'s (DTCA) Motion for Judgment on the Pleadings [612], Relator's opposition [648], DTCA's Reply [702], and the United States' Statement of Interest [649].

Upon consideration of the case, the parties' motions and responses, and the law, DTCA's Motion for Judgment on the Pleadings will be denied.

## I. Background

This case is part of the multi-district litigation of False Claims Act *qui tam* suits against HCA and various related entities. This suit involves allegations of illegal kickbacks to physicians in return for patient referrals to diabetes treatment centers, in violation of the Anti–Kickback and Stark laws. Relator alleges that DTCA opened diabetes treatment centers in hospitals across the country, and recruited physicians to serve as "medical directors." The medical directors' primary responsibility, Relator argues, was the referral of patients to the treatment centers, for which the physicians were paid a referral fee, a scheme Relator alleges violates the Anti–Kickback and Stark laws.

This case originated in the Middle District of Tennessee, and was transferred to this Court under the auspices of the 28 U.S.C. § 1407(a), which provides for transfer of actions pending in different districts to a single district to permit "coordinated or consolidated pretrial proceedings." Before the case was transferred, the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. *United States ex rel. Pogue v. American Healthcorp., Inc.,* 914 F.Supp. 1507, 1508 (M.D.Tenn.1996) (*Pogue I*). The District Court for the Middle District of Tennessee initially granted the motion to dismiss, on the grounds that Relator had failed to allege that any of the claims submitted by Defendant West Paces were false, or that the government had suffered any damages as a result. *Id.* Relator filed a motion to reconsider, which the Court granted and upon reconsideration reversed its earlier position. It held, as to damages to the government as a result of the claims, that Supreme Court precedent does not require that specific damages be shown to recover under the False Claims Act. *Id.* at 1508–09 (citing *Rex Trailer Co.*

*v. United States,* 350 U.S. 148, 76 S.Ct. 219, 100 L.Ed. 149 (1956) and circuit and district cases in which *Rex Trailer* is cited).

In reconsidering whether Relator had failed to allege that the claims submitted or caused to be submitted by the defendants were false, the Court relied on Relator's "implied certification" argument. Relator argued that although the claims were for necessary services rendered, when the claims were submitted "Defendants implicitly stated that they had complied with all statutes, rules, and regulations governing the Medicare Act, including federal anti-kickback and self-referral statutes." *Id.* at 1509. The Court found that Relator's argument was supported by the recent trend of cases, which hold that non-compliance with laws and regulations render submitted claims "false" for purposes of the False Claims Act, and denied the motion to dismiss. *Id.* at 1509–11 (citing *United States ex rel. Roy v. Anthony,* 1994 WL 376271 (S.D.Ohio July 14, 1994); *Ab–Tech Constr., Inc. v. United States,* 31 Fed. Cl. 429 (1994), *aff'd* 57 F.3d 1084 (Fed. Cir.1995); *United States v. Incorp. Village of Island Park,* 888 F.Supp. 419 (E.D.N.Y.1995)).

DTCA's motion for judgment on the pleadings asks the Court to revisit whether the submission of a claim carries with it an implied certification of compliance with underlying laws and regulations and, where those laws and regulations have not been complied with, creates False Claims Act liability. DTCA also advances the argument that Relator failed to plead fraud with particularity, an argument that has also been rejected in this case. The Court will deny DTCA's motion, both because the Court declines to revisit the law of the case, and because the law of the case is correct.

## II. Discussion

### A. The Law of the Case

 As noted, the District Court for the Middle District of Tennessee held that Relator's allegations stated a cognizable claim under the False Claims Act, and that Relator plead fraud with adequate particularity. "[A] decision of a court of coordinate status is entitled to be considered 'law of the case.'" *Hill v. Henderson*, 195 F.3d 671, 678 (D.C.Cir.1999) (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)). Once a prior decision has become the law of the case, it "should not be disturbed by a court of coordinate jurisdiction." *Doe v. Roe*, 841 F.Supp. 444, 446 n. 7 (D.D.C.1994) (citing *United States v. Eilberg*, 553 F.Supp. 1, 3 (D.D.C.1981); 18 Federal Practice § 4478 at 790). Adherence to the law of the case doctrine preserves judicial economy. *Wilson v. Turnage*, 755 F.2d 967, 967–68 (D.C.Cir.1985). It "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citation omitted). The law of the case applies even to a non-final, non-appealable decision; it seeks "to minimize expenditure of judicial resources and energy on matters already decided," and is triggered by a final decision on a particular issue. *United States v. Eilberg*, 553 F.Supp. 1, 4 (D.D.C.1981) (Flannery, J.). "Perpetual litigation of any issue ... delays, and therefore threatens to deny, justice." *Id.* at 816 n. 5, 108 S.Ct. 2166. This Court is not in the business of denying justice.

 While the law of the case is a prudential rather than a jurisdictional doctrine, and permits a court to revisit an earlier decision if it is proper to do so, we will follow it here. Reconsideration of the law of the case is appropriate where there are "unusual" circumstances, "extraordinary" circumstances, "exceptional" circumstances, to prevent a "grave injustice," and the like. *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) ("unusual"); *United States v. Eilberg*, 553 F.Supp. 1, 3 (D.D.C.1981) (Flannery, J.) ("extraordinary"); *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578, 585 (D.C.Cir.1980) ("exceptional" and "grave injustice"). No extraordinary circumstances prompt the Court to reconsider the settled question of whether Relator has properly stated a basis for liability as to DTCA. *Hayman Cash Register* sets out three instances in which reconsideration of the law of the case is proper. First, a successor judge may grant a timely motion to reconsider, if the motion could not have been presented to the original judge. *Hayman Cash Register*, 669 F.2d at 169. Second, where new evidence is available, revisiting the law of the case is proper. *Id.* Third, if a supervening rule of law is valid and applicable to the case at hand, it should be applied regardless of the law of the case. *Id.* at 170. It is on this third ground that DTCA seeks to justify its motion. DTCA urges that the D.C. Circuit's decision in *United States ex rel. Siewick v. Jamieson Science and Engineering, Inc.*, 214 F.3d 1372 (D.C.Cir. 2000), soundly rejects the "implied certification" basis for False Claims Act liability. DTCA also asserts that *Siewick* joins the majority of circuits in rejecting implied certification. As discussed below, DTCA's reading of *Siewick* is incorrect, as is its representation of the law of other circuits. Because no grounds exist for this Court to reconsider the law of the case, the Court declines to do so.[1]

---

**1.** Finally, we note that in *Van Voorhis v. District of Columbia,* 240 F.Supp. 822 (D.D.C.

B. Validity of Implied Certification as a Basis for False Claims Act Liability

■ Although no grounds exist to review the law of this case as established in *United States ex rel. Pogue v. American Healthcorp, Inc.*, 914 F.Supp. 1507 (M.D.Tenn.1996) (*Pogue I* ), in the interest of thoroughness the Court will review the cases cited by DTCA that are alleged to cast doubt on the validity of the implied certification theory of False Claims Act liability. The District Court for the Middle District of Tennessee accepted Pogue's proposition that "a violation of Medicare anti-kickback and self-referral laws also constitutes a violation of the False Claims Act." *Id.* at 1509. It found Pogue's allegation that "the government would not have paid the claims submitted by Defendants if it had been aware of the alleged kickback and self-referral violations" sufficient to state a cause of action under the False Claims Act. *Id.* at 1513; *see* Fourth Amended Complaint at ¶ 48 (alleging that the Medicare and Medicaid claims submitted or caused to be submitted by the defendants would have been denied had the government known of the violations of the Anti–Kickback and Stark Laws).

DTCA argues that cases decided since *Pogue I* have rejected the theory on which Relator relies in his complaint. DTCA's "smoking gun" is *United States ex rel. Siewick v. Jamieson Science & Engineering, Inc.*, 214 F.3d 1372 (D.C.Cir.2000). *Siewick* involved an analysis of whether the statute the defendant was alleged to have violated was such a material term of the government contract that payment would have been withheld had the government known of the violation, *i.e.,* whether "payment [was] conditioned on that certification" of compliance with the statute. *Id.* at 1376. *Siewick* acknowledges that "[c]ourts have been ready to infer certification from silence," with the caveat that it will be implied "only where certification was a prerequisite to the government action sought." *Id.* Because Siewick had not proven that certification of compliance with the statute alleged to have been violated was a condition of the contract, his claim of implied certification failed. *Id.* The *Siewick* Court in no way foreclosed the validity of the implied certification theory in this Circuit, it merely conducted the proper implied certification analysis and found the Relator's allegations wanting. Here, by contrast, it has been determined that compliance with the Anti–Kickback and Stark laws would affect the government's decision to pay. *Siewick* does not reject the foundation on which Relator's claims are laid. Furthermore, two years after *Siewick* the D.C. Circuit again expressed willingness to endorse the implied certification theory in *United States v. TDC Management Corp., Inc.*, 288 F.3d 421, 426 (D.C.Cir.2002) (*TDC II* ). The Court cited *Ab–Tech Construction, Inc. v. United States*, 31 Fed. Cl. 429 (1994), one of the leading implied certification cases, with approval: " 'The withholding of such information-information critical to the decision to pay-is the essence of a false claim.' " *TDC II*, 288 F.3d at 426 (quoting *Ab–Tech*, 31 Fed. Cl. at 434).

1965) (Tamm, J.), the Court declined to follow the law of the case where the prior ruling was on a motion to dismiss under Rule 12(b)(6), as was the case here, because the defense of failure to state a claim upon which relief can be granted cannot be waived and can be asserted at any time during the proceedings. *Id.* at 824. However, the *Van Voorhis* Court reconsidered the law of the case not principally on that ground, but to preserve judicial economy, and avoid a retrial of the case before another jury after the first case resulted in hung jury. *Id.* Judicial economy is not preserved in this case by reconsidering the law of the case.

The theory of implied certification, as set out in *Ab–Tech*, is that where the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent. *Ab–Tech*, 31 Fed. Cl. at 434. The implied certification theory essentially requires a materiality analysis. Certification of compliance with the statute or regulation alleged to be violated must be so important to the contract that the government would not have honored the claim presented to it if it were aware of the violation. *See, e.g., United States v. TDC Mgmt. Corp., Inc.*, 288 F.3d 421, 426 (D.C.Cir.2002) (*TDC II*) (holding the defendant liable for omitting information "indicating that it was acting in a manner that contrary to the *core terms* of the Program" (italics added)); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir.1999) (stating that liability under the False Claims Act must meet a judicially-imposed standard of materiality, which depends on " 'whether that false statement has a natural tendency to influence agency action or is capable of influencing agency action' " (citations omitted)).

The *Pogue I* Court's finding, that Relator's allegation that the government would not have paid the claims submitted if it had known of the alleged kickback and Stark law violations was sufficient to state a False Claims Act claim, indicates the Court found compliance with those laws material to the government's contract with (or indirectly with) the defendants. *Pogue*

*I*, 914 F.Supp. at 1513. That finding is supported by the Medicare Health Care Provider/Supplier Application, OMB Approval No. 0938–0685.[2] Paragraph four of the Certification Statement reads in part:

> I understand that payment of a claim by Medicare or other federal health care programs is conditioned on the claim and the underlying transaction complying with such laws, regulations and program instructions (including the anti-kickback statute and the Stark law) . . . .

This express statement comports with even the most parsimonious application of the implied certification theory. In *United States ex rel. Mikes v. Straus*, 274 F.3d 687 (2d Cir.2001), the Court limited implied false certification to situations in which "the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid." *Id.* at 700 (emphasis original). *Pogue I* has been joined in finding implied false certification of compliance with Anti–Kickback and Stark laws sufficient to state a claim under the False Claims Act by the Southern District of Texas since it was issued. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1047 (S.D.Tex.1998). One court has questioned *Pogue I*'s theory; in dicta, the court noted, "[a]lthough neither party fully addresses this issue in their briefs, I am not convinced that a *qui tam* Plaintiff can use the FCA as a vehicle for pursuing a violation of the anti-kickback statute in this Circuit." *United States ex re. Barmak v. Sutter Corp.*, 2002 WL 987109 (S.D.N.Y. May 14, 2002). As the Court noted, how-

---

**2.** DTCA notes that the form containing this language was adopted in 2001, and the forms in force for the time periods of the complain did not specifically mention anti-kickback and Stark laws. While this is true, it does not negate the evidentiary value of the current form in proving that the government would not have paid the claims had it known of the alleged violations. *See also* 42 U.S.C. § 1395nn(g)(1) (prohibiting payment for health services provided in violation of the Stark law).

ever, it did not have the benefit of full briefing on the issue, and the issue was not directly before it.

DTCA argues that *Pogue I* was followed by a wholesale, nationwide rejection of the implied certification theory. This argument is simply wrong. DTCA first cites the D.C. Circuit's decision in *Siewick,* which, as discussed above, did not work a rejection of implied certification, but simply found that the alleged violation in *Siewick* was not so material to the contract that the government would not have paid the claim had it known the true circumstances. *See generally United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.,* 214 F.3d 1372 (D.C.Cir.2000). DTCA ignores the D.C. Circuit's later decision in *United States v. TDC Management Corp., Inc.,* 288 F.3d 421, 426 (D.C.Cir.2002) (*TDC II* ), which also reveals a willingness to base liability under the False Claims Act on implied certification.

The next case upon which DTCA relies is *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir.1999). In a footnote, the *Harrison* Court noted that implied certification might be a "questionable" proposition in the Fourth Circuit, but reserved the question. *Harrison,* 176 F.3d at 786 n. 8. While the opinion expressed as to implied certification was less than positive, we will not attribute to the Fourth Circuit rejection of a question it expressly reserved.

The laundry list continues with *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 125 F.3d 899 (5th Cir. 1997) (*Thompson II* ). *Thompson II* remanded to the district court the question whether violations of the Stark laws constitute false or fraudulent claims under the False Claims Act, and declined to express on opinion on the matter before the district court had the chance to address it in the first instance. *Thompson II,* 125 F.3d

at 903. On remand, in a case decided long before DTCA submitted its motion to this Court but to which DTCA failed to cite, the district court found in the affirmative. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.,* 20 F.Supp.2d 1017, 1047 (S.D.Tex.1998) (*Thompson III* ).

DTCA next points the Court to *United States ex rel. Hopper v. Anton,* 91 F.3d 1261 (9th Cir.1996). The *Hopper* court did not directly address implied certification. As in *Siewick,* the court based its opinion in part on the materiality of the alleged violation to a decision to pay. *See Hopper,* 91 F.3d at 1266 ("Violations of laws, rules, or regulations alone do not create a false cause of action under the FCA. It is the false *certification* of compliance which creates liability when certification is a *prerequisite to obtaining a government benefit.*" (emphasis original and added)). It noted that the statute of which Hopper claimed violation, the Individuals with Disabilities Education Act (IDEA), does not require certification of compliance by funding recipients. *Id.* at 1267. It further observed that a general compliance form filed by the defendant school district with the California Department of Education, certifying compliance with all applicable laws and regulations, could not have influenced the government's decision to pay because it was filed after special education funding had already been apportioned to California. *Id.*

Finally, DTCA relies on *Mikes v. Straus,* 274 F.3d 687 (2d Cir.2001). *Mikes* adopts and endorses the implied certification theory, limiting it to situations in which "the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid." *Mikes,* 274 F.3d at 700. This limitation is in line with the other courts' requirement that compliance with the statute or regulation must be of such

importance that noncompliance would influence the government's decision to pay. The Stark laws, as observed by *Thompson III*, specifically state that compliance is required in order to receive Medicare reimbursement. *Thompson III*, 20 F.Supp.2d at 1047; 42 U.S.C. § 1395nn(a)(1)(B), (g)(1) (Stark II) (forbidding the presentation of a claim by an entity in violation of the self-referral provisions and directing that no payment may be made to such an entity).

DTCA offers no support for its contention that the majority of circuits have rejected implied certification. In fact, the Court could find no court of appeals decisions expressly rejecting implied certification, although some circuits have expressed reservation. The only court to reject implied certification was a district court, which did so in dicta on a matter not fully briefed and not squarely before it. *See United States ex rel. Barmak v. Sutter Corp.*, 2002 WL 987109 (S.D.N.Y. May 14, 2002). The court rejected the relator's claim for failure to plead a causal relation between the alleged anti-kickback violations and claims for reimbursement, failure to allege certification of compliance with the anti-kickback statute, and failure to allege that the government relied on such certification to make payments. *Id.* at *6. Because there has been no substantial change in the law since *Pogue I* was decided, and the developing law has supported its finding that violations of Anti–Kickback and Stark laws can support a claim under the False Claims Act, we reaffirm *Pogue I* today.

C. DTCA's Argument that West Paces' Implied Certification Cannot be Attributed to DTCA

 DTCA argues that even if implied certification is a legitimate basis for Relator's claims, it cannot be held liable because it did not submit claims for Medicare reimbursement and did not certify compliance with healthcare statutes and regulations. Under the plain language of the False Claims Act, liability attaches to one who "causes to be presented" a false claim. 31 U.S.C. § 3729(a)(1). An argument that the presentation of the claims was the work of another is unavailing as a means to avoid liability under the False Claims Act. *See United States v. Raymond & Whitcomb Co.*, 53 F.Supp.2d 436, 445 (S.D.N.Y.1999) (submission of a false claim by a participant in a venture extends that false claim to all parties). The False Claims Act extends beyond the person making a false claim to " 'one who engages in a fraudulent course of conduct' " that induces payment by the government. *Id.* (quoting *United States v. Incorp. Village of Island Park*, 888 F.Supp. 419, 439 (S.D.N.Y.1995)). Likewise, DTCA's claims that it cannot violate the Stark laws because it is not an entity to which those laws applies must fall. Regardless whether the facts reveal that DTCA may be directly liable under the Stark laws, if DTCA caused a claim to be presented by an entity that *is* covered by the laws, such as the defendant physicians, it may be liable under the False Claims Act.

This is not to say that DTCA will automatically be held liable if Relator's allegations are ultimately proven. The False Claims Act includes a scienter requirement; the violation must have been made "knowingly," which can be proven by actual knowledge, deliberate ignorance, or reckless disregard. 31 U.S.C. § 3729(b); *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376 (D.C.Cir.2000). When the time comes, the Court will, if necessary, consider whether the "knowingly" portion of the False Claims Act has been satisfied as to DTCA. That is a fact-intensive inquiry, however,

and not appropriate to undertake at this time.

### D. Failure to Plead Fraud with Particularity

██ For its final ground for seeking judgment on the pleadings, DTCA urges that Relator's Fourth Amended Complaint fails to plead fraud with particularity, and fails to satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) requires the circumstances constituting fraud to be stated with particularity. This issue has also already been decided. In *United States ex rel. Pogue v. American Healthcorp, Inc.*, 977 F.Supp. 1329 (M.D.Tenn.1997) (*Pogue II*), the court considered whether Relator's complaint met the heightened pleading requirements of Rule 9(b).[3] It concluded that the main purpose of Rule 9(b) is to ensure that defendants have notice of the charges against them adequate to prepare a defense. *Pogue II*, 977 F.Supp. at 1332, 1333. It is the law of the case, which, as previously discussed, the Court will follow.[4] Circumstances have not changed so as to prompt a reconsideration on this issue. Nevertheless, the Court will examine why the law of the case is correct.

The Fourth Amended complaint describes a twelve year fraudulent scheme in which DTCA ran diabetes centers in various hospitals, and appointed doctors to serve as medical directors. Relator alleges the doctors were paid not for their nominal services as medical directors, but on a per-patient basis for referring their patients to the DTCA centers, in violation of the Stark laws' prohibition of self-referral. *See* 42 U.S.C. § 1395nn. The hospitals in which the centers were housed paid DTCA a per-patient fee, which Relator alleges was a kickback of the type prohibited by the Anti–Kickback laws. *See* 42 U.S.C. § 1320a–7b(b). Then the hospitals submitted reimbursement claims to Medicare for the care provided to the patients. The *Pogue II* court found that these allegations amply allowed defendants to prepare their defense. We agree. The *Pogue II* court relied in part on Sixth Circuit caselaw which states that Rule 9(b) is mitigated by Rule 8's short and plain statement language, and the simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b) particularity. *Id.* at 1332 (*quoting Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 679 (6th Cir.1988)). Similar caselaw exists in the D.C. Circuit, in *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373 (D.C.Cir.1981):

> Rule 9(b) is not, however, to be read in isolation from other procedural canons. As Professor Moore notes, "[t]he requirement of particularity does not abrogate Rule 8, and it should be harmonized with the general directives in subdivisions (a) and (e) of Rule 8 that the pleadings should contain a 'short and plain statement of the claim or defense' and that each averment should be 'simple concise and direct.'" Viewed in this light, Rule 9(b)'s requirement of particularity is less certain a standard for measuring the sufficiency of a complaint, and we are constrained to probe deeper .... The rules of civil procedure are not to be strictly construed, and a "a litigant ought not be denied his day in court merely on the ground that his complaint is inartfully drawn."

*Joseph*, 642 F.2d at 1385–86.

The D.C. Circuit addressed how Rule 9(b) applies to *qui tam* cases in *United*

---

**3.** The live pleading in this case is the Fourth Amended Complaint [8]. The *Pogue II* court also examined the Fourth Amended Complaint.

**4.** While DTCA did not join the motion to dismiss under 9(b) in *Pogue II*, the issues it raises are the same as those asserted by West Paces in its 9(b) motion.

*States ex rel. Totten v. Bombardier Corp.,* 286 F.3d 542, 551–52 (D.C.Cir.2002). The court noted that under 9(b) the circumstances that must be pleaded with specificity include " 'time, place, and contents of the false representations.' " *Id.* at 552 (citations and emphasis omitted).[5] The relator in that case had alleged only that non-conforming goods had been delivered, not that the defendants had made false claims as a result of delivery of the non-conforming goods. *Id.* at 551. The court ruled that the relator "must set forth an adequate factual basis for his allegations that the Contractors submitted false claims ..., including a more detailed description of the specific falsehoods that are the basis for his suit." *Id.* at 552. Here, Relator has set out a sufficiently "detailed description" of the specific scheme and its "falsehoods." The time and place are alleged with less specificity, the time given is a twelve year range, and while the scheme is alleged to be nationwide the only specific place mentioned is West Paces Medical Center. The Court finds that this is sufficient under *Bombardier*'s standards. *Bombardier*'s main concern was that the relator had failed to allege the crucial element of a False Claims Act action, that a false claim for payment was submitted. *Id.* at 544. The Relator in this case has adequately alleged that false claims were submitted. *See* Fourth Amended Complaint [8] at ¶¶ 16, 29, 30, 33–34, 38–40, 46, 53, 57. Additionally, where a complaint covers a multi-year period, Rule 9(b) may not require a detailed allegation of all facts supporting each and every instance of submission of a false claim. *See United States ex rel. Lee v. SmithKline Beecham, Inc.,* 245 F.3d 1048, 1051 (9th Cir.2001) (relying on *Cooper v. Pickett,* 137 F.3d 616 (9th Cir.1997), which found sufficient under 9(b) a detailed description of an allegedly fraudulent scheme even though no specific transactions were identified).

DTCA points to other cases to assert that Relator's complaint is insufficient under the standards of Rule 9(b). Those rulings do not support a dismissal of Relator's complaint.[6] DTCA relies heavily on the Eleventh Circuit's decision in *United States ex rel. Clausen v. Laboratory Corporation of America, Inc.,* 290 F.3d 1301 (11th Cir.2002), also a *qui tam* suit based on alleged Medicare fraud. The court dismissed the complaint because, despite amendments, "no copies of a single actual bill or claim or payment were provided. No amounts of any charges by LabCorp were identified. No actual dates of claims were alleged. Not a single completed Form 1500 was provided." *Clausen,* 290 F.3d at 1306. The court would not accept an allegation that claims were submitted to Medicare and refused to allow the relator to make the inferential leap that claims were actually submitted for the tests performed.

The *Clausen* dissent criticizes the majority for focusing too much on "particularity" and not enough on the purpose of the

---

**5.** DTCA would have the Court add to this list "legal theory." DTCA makes much of the fact that the Fourth Amended Complaint does not detail the implied certification theory and the dates and contents of the implied certifications. Rule 9(b) does not require that a plaintiff's legal theory be plead with specificity.

**6.** One of the cases DTCA cites is *United States ex rel. Harris v. George Washington Primary Care Assocs.,* 203 F.3d 53, 1999 WL 1021936 (D.C.Cir.1999). This unpublished decision is governed by D.C. Circuit local rules 28 and 36. Rule 28(c)(1)(A) mandates that unpublished orders entered before January 1, 2002 "are not to be cited as precedent." Additionally, Rule 36 notes that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." D.C.Cir. R. 36(c)(2). In keeping with these rules and policies, the Court will not address *Harris.*

rule, which is to give defendants notice of the claims against them. The detailed description of the allegedly fraudulent scheme, along with the records of some specific patients at specific long term care facilities, and an averment that claims were submitted to Medicare within a few days of the tests being conducted, it would have found, was adequate. *Id.* at 1315. The dissent felt the majority was seeking not particularity but proof in requiring the relator to affix actual claims for payment to the complaint, and it is inappropriate to require proof on a 9(b) motion to dismiss. *Id.* at 1317. This Court agrees with the dissent, and believes that if the D.C. Circuit were to consider *Clausen* it would come to the same conclusion. The D.C. Circuit has taken a generous approach to pleadings. This approach is exemplified in *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C.Cir.2000), which holds that a complaint is not deficient even if it fails to set out a prima facie case as an initial matter. *Sparrow*, 216 F.3d at 1113, 1114. While *Sparrow* notes that Rule 9(b) requires more particularity than Rule 8, which governed *Sparrow, id.* at 1118, Rule 9(b) does not completely vitiate the liberality of Rule 8. *See United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385–86 (D.C.Cir.1981).

One D.C. District case is almost as harsh as *Clausen*. In *United States ex rel. Alexander v. Dyncorp, Inc.*, 924 F.Supp. 292 (D.D.C.1996) (Harris, J.), the court dismissed a *qui tam* claim for failure to state dates on which false invoices were submitted, give the invoice numbers, identify the employees who submitted the invoices, and state facts from which scienter could be inferred. *Alexander*, 924 F.Supp. at 303. While at first glance, *Alexander* would seem to mandate dismissal of Relator's claim, a closer look reveals that *Alexander* sought to effectuate the purposes of Rule 9(b), just as the Court is doing so by

upholding Relator's complaint here. The purposes of Rule 9(b), *Alexander* observes, is "to provide defendants with notice of the violation with which they are charged, in order that they may prepare an adequate defense." *Id.* A further purpose, however, is to discourage nuisance suits and frivolous accusations; the *Alexander* court tacitly acknowledged that it was applying 9(b) with severe stringency to effectuate these policies. *Id.* at 303–04. There is no allegation that Relator filed his suit to force settlement, be a nuisance, or frivolously attack the morality of the defendants, and thus *Alexander* gives little support to DTCA's argument. As the Court has already determined, Relator's complaint adequately allows DTCA to prepare its defense by notifying it of the claims against it, thus fulfilling the purpose of 9(b).

DTCA also cites *United States ex rel. Barmak v. Sutter Corp.*, 2002 WL 987109 (S.D.N.Y. May 14, 2002). While *Barmak* involved a judgment of dismissal based in part on failure to plead fraud with particularity, the opinion does not address the requirements of Rule 9(b) in any detail. The impetus of the dismissal was the failure of the complaint to exclude allegations that had been the subject of a settlement, which expressly foreclosed litigation of the settled claims. *See generally Barmak*, 2002 WL 987109 at *1–4. The court found the complaint confusing as to what claims it included and what it excluded. This general confusion entered into its analysis of the 9(b) requirements. The separation of barred from permitted claims is not an issue facing this Court. Without this issue, the generality of *Barmak*'s 9(b) analysis provides little guidance in assessing Relator's complaint.

Although the Court acknowledges that some cases have required greater specificity in allegations of fraud that Relator's complaint provides, Rule 9(b) is analyzed

case by case. No further amendment of Relator's complaint is required at this time because it is specific enough to allow DTCA to prepare its defense, which is the purpose of 9(b) as read in conjunction with Rule 8. The complaint is sufficient to go forward with discovery. Amendments may need to be offered before trial to provide greater specificity, but that will be decided at a later time.

### III. Conclusion

DTCA's motion for judgment on the pleadings [612] will be denied. DTCA's grounds for its motion have already been rejected in this case. *See Pogue I*, 914 F.Supp. 1507 (M.D.Tenn.1996) (upholding implied certification as a basis for a False Claims Act action); *Pogue II*, 977 F.Supp. 1329 (M.D.Tenn.1997) (finding that Relator plead fraud with adequate particularity). This Court accords comity to the Middle District of Tennessee, from which this case was transferred, and upholds its decisions as the law of the case. Not only are its decisions the law of the case, they are also correct.

A separate order shall issue this day.

### ORDER

This case comes before the Court on Diabetes Treatment Centers of America, Inc.'s (DTCA) Motion for Judgment on the Pleadings [612], Relator's opposition [648], DTCA's reply [702], and the United States' Statement of Interest [649].

Upon consideration of the case, the parties' motions and responses, and the law, it is hereby ORDERED that DTCA's Motion for Judgment on the Pleadings is DENIED.

SO ORDERED.