UNITED STATES of America
ex rel. Scott BARRETT,
et al., Plaintiffs,

v.

COLUMBIA/HCA HEALTHCARE
CORP., et al., Defendants.

No. 99 CV 3304(RCL).

United States District Court,
District of Columbia.

Feb. 24, 2003.

Jeffrey S. Thompson, Thao Ho, Williams Bailey Law Firm, LLP, Houston, TX, R. Gary Stephens, Stephens & Stephens, Houston, TX, for plaintiffs.

Roger S. Goldman, Richard P. Bress, Jennifer & Watkins, Washington, DC, Joseph Wheeler, Katherine Lauer, San Diego, CA, for defendants.

## *MEMORANDUM OPINION*

LAMBERTH, District Judge.

This case comes before the Court on HCA's motion to dismiss [188], Relators' response [242], HCA's reply [275], the United States' statement of interest [203], the United States second statement of interest [597] and HCA's response [617]. Relators attached a proposed second amended complaint to their response [242], which the Court will treat as a deemed

motion for leave to file, to which HCA responded [275]. A. Scott Pogue, a relator in another case pending before this Court filed a motion for leave to file a statement [388], to which HCA filed a motion for leave to respond [417]. James M. Thompson, also a relator in another case pending before the Court, filed a statement [427]. Upon consideration of the case, the parties' motions and responses, and the law, HCA's motion to dismiss will be granted in part.

## I. Background

This case is part of the multi-district litigation of False Claims Act *qui tam* suits against HCA and various related entities. This action comprises various claims made against Gramercy, an ambulatory surgery center (ASC) located in Houston, Texas and a subsidiary of HCA.[1] The Relators, two former Gramercy employees, allege various types of wrongdoing at Gramercy, and filed False Claims Act and various other causes of action. HCA moved to dismiss their complaint.

## II. False Claims Act Claims

### A. Kickbacks and the False Claims Act

■ HCA argues that kickbacks cannot give rise to an FCA cause of action. This is contrary to existing precedent, including from this Court. *See, e.g., United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 238 F.Supp.2d 258 (D.D.C.2002) (Lamberth, J.), *available in* 2002 WL 31856364 (for a more extensive discussion of this issue, the Court refers the parties to this opinion); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1047 (S.D.Tex.1998); *United States ex rel. Po-*

*gue v. American Healthcorp., Inc.*, 914 F.Supp. 1507, 1508 (M.D.Tenn.1996). The cases stating that kickback claims state a cause of action under the FCA rely on precedent stating that FCA liability arises where information is concealed in the submission of a claim that, if known to the government, would affect the government's decision to pay on that claim. Succinctly,

> A number of courts in a variety of contexts have found violations of the False Claims Act when a government contract or program required compliance with certain conditions as a prerequisite to a government benefit, payment, or program; the defendant failed to comply with those conditions; and the defendant falsely certified that it had complied with the conditions in order to induce the government benefit.

*United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 786 (4th Cir.1999). Courts have found that kickback and Stark Law (self-referral) violations affect the government's decision to pay. *See Pogue, Thompson, supra; see also* Medicare Health Care Provider/Supplier Application, OMB Approval No. 0938–0685 at ¶ 4[2] ("I understand that payment of a claim by Medicare or other federal health care programs is conditioned on the claim and the underlying transaction complying with such laws, regulations and program instructions (including the anti-kickback statute and the Stark law) . . . ."); 42 U.S.C. § 1395nn(g)(1) (prohibiting payment for health services provided in violation of the Stark law).

### B. Implied Certification

■ HCA argues that mere lack of regulatory compliance does not rise to the

---

1. For convenience, the Court will refer to the defendants collectively as "HCA."

2. While this language was adopted in 2001, that does not negate its evidentiary value in

proving that the government would not have paid the claims had it known of the alleged violations.

level of an FCA violation, but that there must be a false certification of compliance before the FCA is violated. HCA relies on the fact that Gramercy, the facility at which the violations are alleged to have occurred, is an ambulatory surgery center (ASC), and as such is not required to file an annual cost report or other document certifying compliance with Medicare statutes. This ignores the implied certification theory, which does not require an explicit statement of certification of compliance with laws and regulations.

■ The theory of implied certification, as set out in *Ab–Tech Construction, Inc. v. United States*, 31 Fed. Cl. 429 (Fed.Cl. 1994), is that where the government pays funds to a party, and would not have paid those funds had it known of a violation of a law or regulation, the claim submitted for those funds contained an implied certification of compliance with the law or regulation and was fraudulent. *Ab–Tech*, 31 Fed. Cl. at 434. The implied certification theory essentially requires a materiality analysis. Certification of compliance with the statute or regulation alleged to be violated must be so important to the contract that the government would not have honored the claim presented to it if it were aware of the violation. *See, e.g., United States v. TDC Mgmt. Corp., Inc.*, 288 F.3d 421, 426 (D.C.Cir.2002) (*TDC II*) (holding the defendant liable for omitting information "indicating that it was acting in a manner that was contrary to the *core terms* of the Program" (italics added)); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir.1999) (stating that liability under the False Claims Act must meet a judicially-imposed standard of materiality, which depends on " 'whether that false statement has a natural tendency to influence agency action or is capable of influencing agency action' " (citations omitted)).

HCA focuses heavily on *United States ex rel. Siewick v. Jamieson Science & Engineering, Inc.*, 214 F.3d 1372 (D.C.Cir. 2000), for the proposition that the implied certification is not a viable FCA theory in this Circuit. This is a misreading of Siewick. Siewick involved an analysis of whether the statute the defendant was alleged to have violated was such a material term of the government contract that payment would have been withheld had the government known of the violation, *i.e.*, whether "payment [was] conditioned on that certification" of compliance with the statute. *Id.* at 1376. *Siewick* acknowledges that "[c]ourts have been ready to infer certification from silence," with the caveat that it will be implied "only where certification was a prerequisite to the government action sought." *Id.* Because Siewick had not proven that certification of compliance with the statute alleged to have been violated was a condition of the contract, his claim of implied certification failed. *Id.* The *Siewick* Court in no way foreclosed the validity of the implied certification theory in this Circuit, it merely conducted the proper implied certification analysis and found the Relator's allegations wanting.

Here, by contrast, compliance with the Anti–Kickback and Stark laws would affect the government's decision to pay, as discussed above. *See also United States ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 238 F.Supp.2d 258, *available in* 2002 WL 31856364. *Siewick* does not reject the foundation on which Relator's claims are laid. Furthermore, two years after *Siewick* the D.C. Circuit again expressed willingness to endorse the implied certification theory in *United States v. TDC Management Corp., Inc.*, 288 F.3d 421, 426 (D.C.Cir.2002) (*TDC II*). The Court cited *Ab–Tech Construction, Inc. v. United States*, 31 Fed. Cl. 429 (1994), one of the leading implied certification cases, with approval: " 'The withholding of such

information-information critical to the decision to pay-is the essence of a false claim.'" *TDC II*, 288 F.3d at 426 (quoting *Ab–Tech*, 31 Fed. Cl. at 434).

### C. Pleading Fraud with Particularity

#### 1. Legal Standard

 HCA urges that Relators' First Amended Complaint fails to plead fraud with particularity, thus failing to satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b). Rule 9(b) requires the circumstances constituting fraud to be stated with particularity, and applies to FCA actions. *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1383 (D.C.Cir. 1981). The main purpose of Rule 9(b) is to ensure that defendants have notice of the charges against them adequate to prepare a defense. *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir.1999) counsels: "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Id.* at 784. Furthermore, Rule 9(b) is mitigated by Rule 8's short and plain statement language, and the simplicity and flexibility contemplated by the rules must be taken into account when reviewing a complaint for 9(b) particularity. *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385–86 (D.C.Cir.1981).

The D.C. Circuit addressed how Rule 9(b) applies to *qui tam* cases in *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C.Cir.2002). The court noted that under 9(b) the circumstances that must be pleaded with specificity include " 'time, place, and contents of the false representations.' " *Id.* at 552 (citations and emphasis omitted). The relator in that case had alleged only that

non-conforming goods had been delivered, not that the defendants had made false claims as a result of that delivery. *Id.* at 551. The court ruled that the relator "must set forth an adequate factual basis for his allegations that the Contractors submitted false claims . . ., including a more detailed description of the specific falsehoods that are the basis for his suit." *Id.* at 552.

#### 2. Relators' Complaint

Relators' complaint describes several different fraudulent schemes. The first involves waiver of the mandatory co-pay. Medicare pays 80% of the cost of covered services, but requires patients to pay the remaining 20%. Relators' complaint alleges that Gramercy routinely waived the co-pay, and describes interactions with several named physicians regarding waiver of the co-pay. First Amend. Compl. ¶¶ 19–24, 33, 51. The next scheme is coding uncovered procedures as covered procedures. *Id.* ¶¶ 24, 52–53.

Relators include a number of kickback claims, asserting various types of benefits were provided in exchange for patient referrals. These include: discounting fees for particular physicians to induce them to continue performing procedures at Gramercy, *id.* ¶ 24, 28–29, 46–49; allegations that Gramercy waived the facility fee for a particular physician on one case per month, permitting the physician to collect the facility fee directly from the patient and retain the money, to induce the physician to continue performing procedures at Gramercy, *id.* ¶ 25–26, 30, 32, 46, 50; that Gramercy paid an excessive salary to an employee of Houston Eye Associates to induce HEA to send its patients to Gramercy; *id.* ¶¶ 34–36; and that Gramercy leased old, difficult to repair equipment from a physician in order to induce the physician to continue directing patients to Gramercy. *Id.* ¶¶ 37–40.

The final scheme relates to insurance and Medicare overpayments discovered by Relator Goodwin. Relators allege that when overpayments from Medicare or insurance companies were discovered, the money was not returned but was retained through fraudulent accounting practices. *Id.* ¶¶ 41–45.

[7–10] None of these allegations meet the standard of pleading fraud with particularity. Relators need to set out the details of the specific scheme and its falsehoods, as well as supply the time, place, and content of false representations, and link that scheme to claims for payment made to the United States. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551–52 (D.C.Cir.2002). First, as to the co-pay waiver issue, Relators have not shown that waiver of the co-pay is a violation that rises to the level of affecting the government's decision to pay, such as by citing an applicable statute or regulation. This is the essence of this type of FCA action. *Ab–Tech Constr., Inc. v. United States*, 31 Fed. Cl. 429, 434 (Fed. Cl.1994). Further, aside from a generic restatement of the statutory language under the First, Second, and Third Causes of action, Relators do not allege that claims for payment were made to the federal government for patients for whom the co-pay was waived. A viable complaint must contain such an allegation. *Totten*, 286 F.3d at 551. While a complaint that covers a multi-year period may not be required by Rule 9(b) to contain a detailed allegation of all facts supporting each and every instance of submission of a false claim, some information on the false claims must be included. *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir.2001) (relying on *Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997), which found sufficient under 9(b) a detailed description of an allegedly fraudulent scheme even though no specific transactions were identified). As it stands, Relators' complaint does not state an FCA claim for waiver of co-pays. Relator will be permitted to amend the complaint for this allegation. The upcoding and miscoding claims are also insufficiently linked with the submission of claims to Medicare. Amendment will be permitted for these allegations as well.

The kickback claims suffer a similar infirmity. The allegations are not connected specifically to Medicare patients. In fact, the "free case" allegations are linked directly to cash patients, most of them from Mexico, and therefore do not seem to relate to Medicare at all. To the extent the kickback allegations relate to Medicare patients, they could form the basis for FCA claims, but in their current form they are too vague to give defendants notice of the relationship between the alleged kickbacks and the submission of claims to Medicare. To the extent any of the kickback allegations are intended to assert Stark violations, they fail because they do not assert any relationship between the referring physicians and the facilities, a required element for violation of a prohibition on self-referral.[3] Relators

---

3. The Court notes that Relators' proposed second amended complaint, attached to their response [242] to HCA's motion to dismiss alleges an ownership relationship between some physicians and Gramercy. *See* Proposed Second Amend. Compl. ¶ 14. However, it does not rectify other infirmities in the complaint, nor does it allege more particular billing information. More specific billing information is essential on the Stark claims, because ASCs are subject to Stark's prohibition only for "unbundled" claims submitted to Medicare. Medicare and Medicaid Programs; Physicians' Referrals to Health Care Entities With Which They Have Financial Relationships, 66 Fed.Reg. 856, 923 (Jan. 4, 2001) (stating that bundled claims for services filed by ASCs will not be considered designat-

will be permitted to amend their complaint.

█ Finally, the overpayment scheme is inadequately alleged. The allegation is that Gramercy retained overpayments received from insurance companies and Medicare rather than refunding them. As to private insurance companies, these allegations are wholly irrelevant to an FCA action. As to Medicare, the allegations do not contain 31 U.S.C. § 3729(a)(7)'s required element of making a false record or statement. Leave to amend will be permitted.

### D. Conspiracy

Because none of Relators' FCA claims are adequately plead, the Court will not consider the viability of the conspiracy allegations.

### E. Count 4

█ Count 4 cites to 31 U.S.C. § 3729(a)(4), one of the FCA's provisions that permits a cause of action where a person has possession of property or money used or to be used by the government, and delivers less than all the property to the government for which it receives a receipt. The elements are: "(1) possession, custody, or control of property or money used, or to be used, by the government, (2) delivery of less property than the amount for which the person receives a certificate or receipt, (3) with intent to defraud or willfully to conceal the property." *United States ex rel. Aakhus v. Dyncorp, Inc.*, 136 F.3d 676, 681 (10th Cir. 1998). While Relators' allegations allude to an alleged dishonest stewardship of government and insurance overpayments, none of the allegations implicate delivering property to the United States and receiving a receipt in return. To the extent Relators seek to assert such a claim, it lacks the specificity required by Rule 9(b).

### F. Prejudice

█ HCA repeatedly argues that Relators' complaint should be dismissed with prejudice, and leave to amend not granted. This is contrary to the principles and policies of the Rules of Civil Procedure. Rule 15 permits parties to apply for leave to file an amended complaint, and dictates that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The D.C. Circuit has directed that leave to amend is "almost always" permitted to cure deficient fraud pleadings. *Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 74 (D.D.C.2002) (Walton, J.) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C.Cir.1996)). Leave to amend should be permitted unless there is undue delay, bad faith, dilatory motive, repeated failure to cure, undue prejudice, or futility. *Id.* (citations omitted). HCA argues Relators' failure to submit an adequate complaint in three years constitutes undue delay. The Court disagrees. Discovery in this case has been stayed pending decision on HCA's motion to dismiss, thus the case has been almost completely inactive during the pendency of the motion. HCA has not been prejudiced or harmed in any way by having to act on an inadequate complaint. In *United States ex rel. Joseph v. Cannon,* 642 F.2d 1373 (D.C.Cir.1981), the D.C. Circuit upheld dismissal of a *qui tam* complaint with prejudice for failure to amend in the 11 months between the filing of a motion to dismiss and the district court's decision. *Id.* at 1386. However, it noted that it was relying on the particular circumstances-a complaint that "could hardly have been more generalized and vague" and appeared to have no merit whatsoever. *Id.* That is not the case here, in which the Court is confronted with a complaint that is inartful but not obviously meritless. The FCA causes of action will be dis-

ed health services (DHS) subject to the Stark laws).

missed without prejudice, and Relators are directed expeditiously to seek leave to file an amended, adequate complaint.

## IV. Other Causes of Action

### A. Common Law Claims

 Relators assert two common law causes of action in their complaint, unjust enrichment and conspiracy to perform illegal acts. Relators have no standing to assert these causes of action on behalf of the United States. *United States ex rel. Long v. SCS Bus. & Tech. Inst.*, 999 F.Supp. 78, 91–92 (D.D.C.1998) (Sullivan, J.), *rev'd on other grounds* 173 F.3d 870 (D.C.Cir.1999). While the FCA effects a partial assignment of the government's damages claims to relators, thus conferring standing upon them, it effects no such assignment of non-FCA causes of action. *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F.Supp.2d 141, 149 (D.Mass. 2000). The common law claims are personal to the United States and the Relators have not alleged that they suffered any injury in fact, nor could they. These claims will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### B. Anti–Kickback Act

 Relators include a direct cause of action under the Anti–Kickback Act, 42 U.S.C. § 1320a–7b(b).[4] There is no private right of action under the Anti–Kickback Act. *West Allis Memorial Hosp., Inc. v. Bowen*, 852 F.2d 251, 255 (7th Cir.1988); *Donovan v. Rothman*, 106 F.Supp.2d 513, 516 (S.D.N.Y.2000). Rather, it is a statute providing for criminal penalties for its violation. *Donovan*, 106 F.Supp.2d at 516, and "neither the structure of [the Anti–Kickback Act] nor its legislative history suggests that Congress intended to pro-

vide a private remedy." *West Allis Mem. Hosp.*, 852 F.2d at 255. This claim will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## V. Employment–Related Causes of Action

### A. False Claims Act Whistleblower Provision

 Congress included a provision in the False Claims Act to protect whistleblowing employees, which provides that any employee suffering a variety of adverse employment consequences, including discharge, "because of lawful acts done by the employee ... in furtherance of an action under this section, including investigation ... shall be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h). To make out a claim of retaliation under this section, an employee must demonstrate that "(1) he engaged in protected activity, that is, 'acts done ... in furtherance of an action under this section'; and (2) he was discriminated against 'because of' that activity." The second element is further broken down to require: "(a) 'the employer had knowledge the employee was engaged in protected activity'; and (b) 'the retaliation was motivated, at least in part, by the employee's engaging in [that] protected activity.'" *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C.Cir.1998) (citations omitted).

 HCA argues, relying on its argument that Relators' complaint must fall, that because the complaint is deficient ipso facto the retaliatory discharge claim must fail along with it. This is incorrect. "[T]he protected conduct element of [a re-

---

**4.** Although the complaint cites 42 U.S.C. § 1395nn(b), the Court shares HCA's assumption that the Relators intended to cite the Anti–Kickback Act, located at 42 U.S.C. § 1320a–7b(b).

taliatory discharge] claim does not require the plaintiff to have developed a winning qui tam action before he is retaliated against," but merely to have acted in furtherance of such an action. *Yesudian,* 153 F.3d at 739. Congress intended to protect employees engaged in the process of collecting information, *"before* they have put all the pieces of the puzzle together." *Id.* at 740 (emphasis original). Even employees who have not filed *qui tam* suits are covered. *Id.* All that is required is that an employee be investigating false or fraudulent claims aimed at extracting money from the government. *Id.; Luckey v. Baxter Healthcare Corp.,* 2 F.Supp.2d 1034, 1055 (N.D.Ill.1998) ("[T]he employee must, at least to some degree, couch her concerns or investigation in terms of funds her employer fraudulently obtained from the government."); *United States ex rel. Hopper v. Anton,* 91 F.3d 1261, 1269 (9th Cir.1996) (accord); *Hammack v. Automated Info. Mgmt., Inc.,* 981 F.Supp. 993, 996 (N.D.Tex.1997) (accord).

The complaint describes protected investigatory activity, employer knowledge of that activity, and retaliation for that activity adequately to withstand Rule 12(b)(6) scrutiny. In reviewing a motion to dismiss under Rule 12(b)(6), courts are guided by two primary principles. First, to accept as true all well-pleaded facts of a complaint, construing the complaint liberally in favor of the plaintiff, and second, to dismiss only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). The complaint states that the Relators spoke to supervisors and management regarding the alleged waiver of co-pays (First Amend. Compl. ¶¶ 21–

23), discounting (¶¶ 26–31), kickbacks (¶¶ 35, 39), and retention of overpayments (¶¶ 43–44), demonstrating both protected activity and employer knowledge.[5] The complaint goes on to allege that the Relators were terminated for their activities in furtherance of the FCA suit. ¶ 60. While the complaint inartfully and inadequately pleads the FCA causes of action based on these behaviors, that does not dictate a 12(b)(6) dismissal of the retaliatory discharge based on the well-pleaded facts underlying those causes of action. The complaint meets the standards of 12(b)(6) and the legal framework for evaluating § 3730(h) retaliatory discharge claims.

### B. Intentional Infliction of Emotional Distress

■ The complaint also states a Texas state law cause of action for intentional infliction of emotional distress, stating that Relators suffered extreme distress at being asked to perform illegal acts. HCA argues for the dismissal of this cause of action under several rationales. First, it notes that under Texas law, intentional infliction of emotional distress (IIED) is available as a cause of action only for behavior whose primary risk or intended consequence is emotional distress. *Standard Fruit & Vegetable Co., Inc. v. Johnson,* 985 S.W.2d 62, 67 (Tex.1998). Because the primary goal of HCA's alleged illegal acts, as stated in the complaint, was to increase business at Gramercy, HCA reasons, any emotional distress is incidental to that goal and therefore not separately compensable. This argument is appealing, but flawed. While the alleged goal of the alleged behavior was to increase Gramercy's business, that does not speak to the defendants' goal in asking Relators specifi-

---

**5.** As explained *supra,* at least some of this activity, if properly plead, could form the ba-

sis of an FCA suit.

cally to participate in illegal acts to which they objected. The distinction is fine, but it is enough to survive a 12(b)(6) motion.

■ Second, HCA urges that the IIED claim is framed solely to circumvent Texas's per se rule that wrongful or retaliatory discharge does not rise to the level of inflicting extreme emotional distress. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex.1999); *Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998). HCA is correct about the law, but we must take Relators' complaint as we find it and construe it liberally in their favor. Under this standard, the Court does not find that the illegal activity allegation stated in the complaint is pretext for the "true" retaliatory discharge allegation.

■ Finally, HCA advocates dismissal because the complaint does not plead all the elements of IIED. While it is certainly better pleading practice to include all the legal elements of a claim in a complaint, it is not mandated in this Circuit. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C.Cir.2000) (reversing district court's dismissal of a complaint that failed to plead all elements of employment race discrimination claim). Relators are urged, however, to take the opportunity to remedy this deficiency if they seek to file an amended complaint.

The Court takes to heart Texas's extremely stringent view of IIED in the workplace. In *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605 (Tex.1999), the Texas Supreme Court cautioned, "to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." *Bruce*, 998 S.W.2d at 613. It further warned, "[s]uch extreme conduct exists only in the most unusual of circumstances." *Id.* However, this caselaw will come into play at a later, fact-based stage in this litigation. It does not create an absolute bar on IIED for workplace conduct, and thus does not mandate dismissal of Relators' cause of action.

### III. Conclusion

HCA's motion to dismiss the complaint will be granted in part. Relators failed to meet the particularity standard of Rule 9(b) with respect to their False Claims Act counts. The complaint fails to show a nexus between the alleged fraudulent acts and claims to the government for Medicare funds. These counts will be dismissed without prejudice to permit Relators to amend the complaint to bring it into compliance with 9(b). Relators' common law and Anti–Kickback Act claims will be dismissed with prejudice, for lack of standing and lack of a private right of action, respectively. Finally, as they are viable and adequately plead, Relators' employment law causes of action will stand.

A separate order shall issue this day.

### ORDER

This case comes before the Court on HCA's motion to dismiss [188], Relators' response [242], HCA's reply [275], the United States' statement of interest [203], the United States second statement of interest [597] and HCA's response [617]. Relators attached a proposed second amended complaint to their response [242], which the Court will treat as a deemed motion for leave to file, to which HCA responded [275]. A. Scott Pogue, a relator in another case pending before this Court filed a motion for leave to file a statement [388], to which HCA filed a motion for leave to respond [417]. James M. Thompson, also a relator in another case pending before the Court, filed a statement [427].

Upon consideration of the case, the parties' motions and responses, and the law, it is hereby ORDERED that HCA's motion to dismiss [188] is GRANTED in part and DENIED in part. Relators' complaint is DISMISSED without prejudice as to the First, Second, Third, and Fourth Causes of Action. If Relators wish to submit an amended complaint for these causes of action they must do so within 30 days of this order. The motion is DENIED as to the Eighth and Ninth Causes of Action.

It is further ORDERED that Relators' complaint is DISMISSED with prejudice to Relators, but without prejudice to the United States, as to the Fifth, Sixth, and Seventh Causes of Action.

It is further ORDERED that Pogue's motion for leave to file a statement [388] is GRANTED, and HCA's motion for leave to file a response [417] is GRANTED.

It is further ORDERED that Relators' motion to file a second amended complaint [242] is GRANTED.

SO ORDERED.